OPINION
{¶ 1} David R. Knoop, executor of the estate of Violet Himes Schumann, appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his motion for summary judgment against Floyd Knoop, granted Floyd's motion for summary judgment, and dismissed a third party complaint. *Page 2 
 {¶ 2} As a preliminary matter, we note that David filed a motion to strike portions of Floyd's brief that contain "inappropriate speculations, personal attacks, half-truths and facts which are improper and unsupported by the record," which we overruled on August 30, 2007. To the extent that such allegations are contained in either brief, we will ignore them. We will also ignore evidence that was offered in David's motion for relief from judgment if it was not also offered for purposes of summary judgment.
 {¶ 3} David and Floyd are cousins, and Schumann was their aunt. In the years preceding her death, Schumann lived alone or in a nursing home. She had no spouse at that time and no children. Pursuant to a document that was executed in 1999, Schumann named Floyd to act as her attorney-in-fact in her financial affairs. Schumann wrote a letter to her attorneys explaining that they were to hold the appointing instrument in safekeeping, "to be surrendered only upon the happening of one of the following conditions:
 {¶ 4} "A) Specific instructions from me, either oral or written;
 {¶ 5} "B) The written opinion of my attending physician or a licensed medical doctor certified in the specialty of psychiatry that I am mentally or physically incompetent and unable to handle my everyday business affairs[.] * * *"
 {¶ 6} In November 2002, Floyd came to believe that Schumann was incompetent to handle her financial affairs based on conversations with her attorney and his own observations and conversations with Schumann. Accordingly, Floyd contacted Schumann's physician and requested a letter from him addressing Schumann's competence. The parties dispute what Floyd told the physician, Dr. Tabatabaian ("Dr. Taba"), in their conversation about this letter. Dr. Taba subsequently wrote a letter expressing his opinion that Schumann was suffering from paranoid *Page 3 
delusions. Upon receiving Dr. Taba's letter, Schumann's attorney released the power of attorney to Floyd. Shortly thereafter, Floyd closed Schumann's bank accounts and emptied her safe deposit box. He took the assets to Nebraska, where he lived, and opened new accounts in his and his wife's names. Floyd began to manage Schumann's finances from there.
 {¶ 7} A few weeks later, when Schumann realized what had happened, she hired a new attorney, executed a new power of attorney naming a different attorney-in-fact, executed a new will which disinherited Floyd, and filed a lawsuit to recover the assets over which Floyd had taken control. In the new will, David was named the executor of the estate. The suit was later dismissed when Floyd returned the assets.
 {¶ 8} Schumann died on July 25, 2005. Floyd subsequently filed claims against the estate for the time he had spent managing Schumann's assets and for the legal fees he incurred when Schumann filed the lawsuit to recover the assets he had taken pursuant to the power of attorney. These claims were apparently resolved in the probate court.
 {¶ 9} On July 25, 2006, David, as executor of Schumann's estate, filed a complaint against Floyd for breach of fiduciary duty, conversion, fraud and misrepresentation, intentional infliction of emotional distress, replevin, frivolous conduct in filing a will contest, and frivolous conduct in filing claims against the estate. This complaint was filed in the general division of the Montgomery County Court of Common Pleas, but the probate court judge was assigned to hear the case. The probate judge was familiar with the case through the administration of the estate.
 {¶ 10} Floyd filed a counterclaim against David that mirrored the estate's complaint, except that the frivolous conduct claims were omitted. Generally, Floyd asserted that he had not taken any assets from Schumann improperly and that, if assets were missing, David must have committed a *Page 4 
breach of fiduciary duty, conversion, or fraud and misrepresentation. Floyd also filed a third party complaint against Randall Stone, who was his successor as attorney-in-fact. Floyd and David each filed motions for summary judgment.
 {¶ 11} On January 22, 2007, the trial court granted Floyd's motion for summary judgment on David's claims, denied David's motion for summary judgment, and dismissed the complaint against Randall Stone. Specifically, the trial court concluded that all documented assets were accounted for and that there was no proof of the existence of the cash alleged to be missing from Schumann's attic. It found no fraud or misrepresentation, breach of fiduciary duty, conversion, replevin, or intentional infliction of emotional distress.
 {¶ 12} David appeals from the trial court's judgment, raising six assignments of error.
 {¶ 13} First, David argues that the trial court erred in concluding that there was no genuine issue of material fact as to whether Floyd had engaged in fraud and had improperly converted Schumann's assets. David claims that many of the "facts" justifying Floyd's actions were unsupported by the record because particular types of evidence — other than Floyd's testimony — were not offered. David also claims that Schumann's alleged mental illness was irrelevant to evaluating Floyd's conduct. At the same time, he argues that Schumann was, in fact, competent, and he questions the bases for Floyd's concerns about her competence.
 {¶ 14} In our view, the parties' actions, particularly the reasonableness of Floyd's actions in asserting control over Schumann's assets, must be assessed in light of Floyd's claim that Schumann was unable to manage her own finances in late 2002. Although David claims that Floyd "guilefully misrepresented to the lower court that Violet Schumann suffered from `mental illness,'" Floyd's deposition testimony supported this assertion. Floyd claimed that Schumann's attorney had called *Page 5 
him to alert him to concerns which had allegedly been raised by the bank about Schumann's finances. David obj ected to Floyd's representations about the bank's actions on hearsay grounds, but Floyd's motion for summary judgment included copies of checks and bank statements that supported his suggestion that there was reason for concern about the activity on Schumann's accounts. For example, in a one-month period in late 2002, the bank records show that Schumann wrote 81 checks, the vast majority for $20 or less. Copies of the cancelled checks, which were also attached, showed that these checks were made out to payees such as "Winners Research," "G.A.D. Award Office," "American Prize Headquarters," "Cash Prize Office," "Prize Reporting Bureau," and many organizations identified only by acronyms which are otherwise unidentifiable. Floyd also testified to his own observations that, in November 2002, there had been sweepstakes entries all over Schumann's house. He further testified that her house had been filthy, that she had believed people were living in her attic, that she had given her Social Security number out over the phone, and that she believed there was a job waiting for her in Washington.
 {¶ 15} The letter from Schumann's physician, Dr. Taba, also supported the claim that Schumann had not been competent to manage her financial affairs. Dr. Taba concluded that Schumann suffered from "paranoid delusions." He recounted in his deposition that, during office visits, she had been very upset, had discussed paying money for sweepstakes entries and waiting for a big payoff, and had believed that she had an appointment with President Bush. Dr. Taba also stated that the conclusion in his letter about Schumann's mental state was based solely on his own personal observations.
 {¶ 16} David's assertions that Floyd had committed fraud and conversion were based entirely on his claim that Floyd had improperly induced Dr. Taba to vouch for Schumann's mental instability *Page 6 
by misrepresenting himself as a physician and by failing to reveal that he himself would be the person taking control of Schumann's financial affairs. However, David's evidence did not support this claim. Although Dr. Taba testified that Floyd identified himself as a physician, Dr. Taba maintained that his letter was based on his own observations and not on Floyd's representations about Schumann's mental health. Thus, it seems that Dr. Taba would have written the letter in question — and reached the same conclusion — whether the letter had been requested by Floyd, the bank, David, or someone else. Accordingly, Floyd's alleged misrepresentation of his profession was immaterial.[1]
 {¶ 17} David also emphasized in his brief and oral argument that Dr. Taba admitted to having had no knowledge of Schumann's finances. David concludes from this admission that Dr. Taba was in no position to offer an opinion about Schumann's ability to manage her finances. This conclusion does not logically follow. The critical issue was not whether Dr. Taba knew any detailed information about Schumann's finances or who her attorney-in-fact would be if she were found to be incompetent. Rather, the question put to Dr. Taba was whether Schumann was, in his opinion, competent to manage her financial affairs. Detailed knowledge of the financial affairs is not necessary to the formulation of such an opinion, and there is no evidence that Dr. Taba was not qualified to offer such an opinion. David's next argument is that the trial court relied on unsupported "facts" in reaching its conclusion. According to David, these "disingenuous representations" included Schumann's expenditure of money on sweepstakes, the alleged concerns of *Page 7 
her banker and mailman, the bank's inability to "order checks fast enough" to keep up with Schumann's demand, and the rapid depletion of her assets.
 {¶ 18} Although Floyd apparently did not present the types of evidence that David would have liked or all the evidence that might have been available to support these assertions, Floyd did present evidence in support of his conclusion that she was not able to manage her finances responsibly. As discussed above, the number of canceled checks and the payees named on those checks substantiated Floyd's assertion that Schumann's banking activities were cause for concern. Although David points out that "most of the sweepstakes checks were for negligible amounts," the number of checks still resulted in a substantial depletion of assets. As we mentioned, in one month Schumann wrote over 80 checks. Even if the checks averaged only $10 — $15 dollars each, she could have easily depleted the account in question of $1,000 or more per month. The account's balance was approximately $9,000. David did not present any evidence that these expenses were reasonable.
 {¶ 19} There are numerous other specific factual allegations in Floyd's deposition with which David takes issue, such as whether insurance policies had lapsed and whether law enforcement officers had expressed concern about Schumann's ability to manage her affairs. The particulars of these factual assertions, however, are not relevant to the ultimate issues in this case. Floyd undoubtedly had cause to believe that Schumann was not able to take care of her financial affairs based on his own observations and her bank records. Dr. Taba's letter further supported this conclusion. In fact, under the terms of Schumann's escrow letter, Dr. Taba' s letter alone justified the release of the power of attorney to Floyd, and additional evidence was not required to justify Floyd's actions. Moreover, Floyd was not under any obligation to seek a guardianship, as David asserts that he should have done. The point of a springing power of attorney is to avoid the need for a *Page 8 
guardianship. Thus, the court reasonably concluded that there was no genuine issue of material fact as to whether Floyd had engaged in fraud in order to obtain the power of attorney.
 {¶ 20} Likewise, there was no genuine issue of material fact as to whether Floyd had converted any of Schumann's assets. To prove conversion, a claimant must demonstrate that the defendant wrongfully exerted control over the claimant's personal property inconsistent with or in denial of his or her rights. Abbe Family Foundation and Trust v.Portage Co. Sheriffs Dept, Portage App. No. 2005-P-0060, 2006-Ohio-2497, at ¶ 29. A person seeking damages for conversion must show that he or she had an ownership interest in or a right to possess the property at the time of the alleged conversion. Thompson v. Faddis, Portage App. No. 2006-P-0036, 2007-Ohio-891; Meros v. Mazgaj (Apr. 30, 2002), Trumbull App. No. 2001-T-0100. Although David contends that Floyd took too long returning the assets, the delay does not create a genuine issue of material fact as to a claim of conversion. By virtue of the power of attorney, Floyd had the authority to exert control over Schumann's assets and did not do so wrongfully. When a new attorney-in-fact was appointed, Floyd returned the assets within a reasonable time frame considering his fiduciary obligations and the questions about Schumann's competence and thus her ability to validly execute a new power of attorney.
 {¶ 21} The trial court found that one additional claim — that $10,000 in cash had been stolen from Schumann — was unsupported by any evidence. This conclusion was also correct. The existence of the money, which was allegedly located in Schumann's attic, was never substantiated. As the trial court noted, neither David nor Floyd had seen the $10,000 that Schumann claimed had been stolen from her attic. Both men recalled that Schumann had accused numerous relatives of stealing from her in the past, all of whom felt that they had been wrongly accused, and she had also *Page 9 
accused bank employees of stealing from her safe deposit box. The evidence of Schumann's paranoid delusions, coupled with the absence of any other evidence that money had actually been hidden in or taken from her attic, supported the trial court's conclusion that there was no genuine issue of material fact as to this claim.
 {¶ 22} All of David's claims are based on his assertion that Floyd committed fraud and converted Schumann's property. Having found that there was no genuine issue of material fact as to either of these claims, David's claims for breach of fiduciary duty and intentional infliction of emotional distress must also fail. Although we agree with David that Floyd acted improperly when he deposited Schumann's funds in a joint and survivorship account in his and his wife's name, there was no evidence that Floyd did so with a malicious purpose.[2] Also, neither the estate nor Schumann suffered any harm from the fact that Floyd temporarily held the funds in this type of account.
 {¶ 23} David further contends that the trial court erred in granting summary judgment on the claims for fraud and intentional infliction of emotional distress because Floyd did not address these claims in his motion for summary judgment. We disagree with this characterization of the motion for summary judgment. Floyd's motion did not address each claim separately. Rather, it contained broad language that none of David' s claims were supported. For example, it states that there was not "any evidence in existence, nor has there ever been any to support the Plaintiff s allegations against Dr. Knoop" and that "David Knoop has no objective evidence against Floyd and Pam Knoop to support his claims." Based on these assertions and the fact that the claims are interrelated, the trial court reasonably interpreted the motion as seeking summary judgment on all the claims raised in *Page 10 
David's complaint.
 {¶ 24} David also contends that the trial court erred in granting summary judgment on his frivolous conduct claims. In his complaint, David asserted that Floyd had engaged in frivolous conduct when he filed a will contest action and filed claims against the estate. In its decision granting summary judgment, the court made the following statement with respect to these claims:
 {¶ 25} "[S]ince this Court denied Summary Judgment in the will contest action and had ample opportunity to review the depositions and the evidence, the court finds there is no evidence of Defendants' frivolous conduct in filing the will contest action or in filing claims against the estate."
 {¶ 26} In ruling on these claims, the trial judge, who was the probate judge sitting by assignment in the general division of the common pleas court, appears to have relied on her first hand knowledge of evidence that was filed in the probate case, as well as evidence that was part of this case. It is not clear to what extent the evidence offered in the two cases overlapped. The allegedly frivolous claims apparently dealt with Schumann's competence when she revoked Floyd's power of attorney and changed her estate plan to exclude him and with Floyd's request for compensation for the work he did as attorney-in-fact. In the probate case, the court appears to have denied the estate's motion for summary judgment on these claims. This denial forms the basis of the trial court's conclusion herein that the claims were not frivolous. Although the conclusion may be correct based on the totality of the evidence with which the trial judge was personally familiar, the record before us does not demonstrate that summary judgment was appropriate on these claims. Thus, we will remand these claims to the trial court for further consideration.
 {¶ 27} David also contends that the trial court erred in granting Floyd's motion to quash a subpoena and to rule on his motion to compel discovery. Both of these arguments relate to his *Page 11 
attempt to get information and records from Schumann's former attorney, who had drafted the power of attorney and one of her wills and who had released Schumann's power of attorney to Floyd. It is not clear that David was entitled to these records because they were the "property" of the estate, as he contends. Further, he did not demonstrate how these records or the attorney's testimony were relevant to the question of whether Floyd had acted improperly in performing his responsibilities as attorney-in-fact. Thus, we find no error in the trial court's granting of the motion to quash or in its implicit denial of the motion to compel discovery.
 {¶ 28} Finally, David contends that Judge McCollum was improperly assigned to handle the case because she was not a judge of the general division of the court of common pleas. As mentioned above, Judge McCollum is a judge of the probate division of the court of common pleas. The presiding judge of a court of common pleas can assign a judge from one division of the same court to another division. Schucker v.Metcalf (1986), 22 Ohio St.3d 33, 37, 488 N.E.2d 210. The attachments to David's own brief demonstrate that the presiding judge made the assignment in this case. Thus, this argument is without merit.
 {¶ 29} With respect to the claims for frivolous conduct, the judgment of the trial court will be reversed and the matter will be remanded. In all other respects, the judgment of the trial court will be affirmed.
GRADY, J. and GLASSER, J., concur.
[1] Floyd had a doctorate degree in microbiology and taught at Creighton University's medical school. Although Dr. Taba testified that Floyd had identified himself as a physician, it is possible there was simply a misunderstanding as to his occupation. In any event, Dr. Taba's understanding of Floyd's profession is immaterial for the reasons discussed above.
[2] Floyd asserted that he placed the funds in a joint and survivorship account with his wife so that his wife could provide for Schumann in the event he became incapacitated or died. *Page 1