[Cite as *Ihenacho v. Ohio Inst. of Photography & Technology*, 2011-Ohio-3730.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

CHARLES IHENACHO               :

    Plaintiff-Appellant             :          C.A. CASE NO.    24191

v.                                      :          T.C. NO.    09CV3316

OHIO INSTITUTE OF PHOTOGRAPHY       :          (Civil appeal from
AND TECHNOLOGY                                   Common Pleas Court)

    Defendant-Appellee             :

                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___29th___ day of ___July___, 2011.

. . . . . . . . . .

KENDALL D. ISAAC, Atty. Reg. No. 0079849, 341 S. Third Street, Suite 10, Columbus, Ohio 43215
    Attorney for Plaintiff-Appellant

CHARLES IHENACHO, 5310 Westbrook Road, Clayton, Ohio 45315
    Plaintiff-Appellant

RICHARD A. TALDA, Atty. Reg. No. 0023395 and SASHA ALEXA M. VANDEGRIFT, Atty. Reg. No. 0080800, 33 W. First Street, Suite 600, Dayton, Ohio 45402
    Attorneys for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Charles Ihenacho appeals multiple decisions of the Montgomery County Court of Common Pleas, General Division, to wit: the decision granting defendant-appellee Ohio Institute of Photography and Technology's (hereinafter "OIPT") motion for default judgment regarding its counterclaims against Ihenacho; the decision granting OIPT's motion for judgment on the pleadings regarding Ihenacho's claims for conversion, fraud, discrimination, and emotional distress; the decision granting OIPT's motion for summary judgment regarding Ihenacho's claims for breach of contract and negligence; and the decision overruling Ihenacho's motion to strike the testimony of OIPT witness Patricia Shoope regarding Ihenacho's financial aid status while enrolled at OIPT. The trial court issued a Civ. R. 58(B) notice of a final appealable order in the instant case on August 3, 2010. Ihenacho filed a timely notice of appeal with this Court on August 6, 2010.

I

{¶ 2} Ihenacho applied for admission into OIPT's criminal justice associate degree program in January of 2005. Ihenacho's expected graduation date was in August of 2006. In order to finance his education at OIPT, Ihenacho applied for federal student financial aid in the form of grants and loans by submitting a Free Application for Financial Student Assitance ("FAFSA") to the United States Department of Education. Ihenacho's eligibility for the 2004-2005 award year determined his financial aid eligibility from February of 2005 to June of 2005. Ihenacho indicated on his FAFSA that he was not a U.S. citizen, but rather an eligible non-citizen. Ihenacho also indicated that he had not registered with Selective Service. Ihenacho listed his address on the FAFSA as 5941 Culzean Drive, Apt. 1018,

Trotwood, OH 45426.   Ihenacho also listed the Culzean Drive address as his home address on his OIPT enrollment application.

{¶ 3}   After submitting his FAFSA for review, Ihenacho received his first Financial Aid Award Letter from OIPT on January 13, 2005.   The first award letter estimated Ihenacho's financial aid award with the Federal Pell Grant, Ohio Institutional Grant, and Federal Stafford Loans to be $22,451.00.   Ihenacho received a second award letter on February 1, 2005, which estimated his financial aid award to be $25,385.00, which was the total cost of the criminal justice program.   Thus, Ihenacho had no out-of-pocket expenses.

{¶ 4}   Ihenacho was admitted as a student, and OIPT sent him an acceptance letter on January 24, 2005.   On February 2, 2005, the Department of Education sent Ihenacho an Institutional Student Informational Report ("February ISIR") which indicated two problems with his eligibility for federal financial aid, namely that Ihenacho had not provided proof of his citizenship status, nor had he complied with the Selective Service requirement.   The February ISIR indicated that it was sent to the Culzean Drive address provided by Ihenacho on his FAFSA.   Despite these problems, OIPT ostensibly received a financial aid check from the Department of Education, and Ihenacho began classes on February 16,2005.

{¶ 5}   Approximately eight months later, the Department of Education sent Ihenacho a second ISIR on September 19, 2005, to the Culzean Drive address.   The September ISIR stated that Ihenacho had still not complied with the Selective Service requirement.   There is no evidence in the record which establishes that Ihenacho responded to the Department of Education or attempted to provide the information requested in either ISIR.

**{¶ 6}** According to OIPT, in early January of 2006, Ihenacho was contacted by school officials who informed him that he needed to resolve his financial aid issues by providing proof of his Selctive Service exemption. Ihenacho failed to provide the requested information. As a result, Ihenacho failed to establish that he was eligible for certain types of financial aid, and OIPT was required to refund his financial aid to the Department of Education. Thus, Ihenacho owed a tuition balance to OIPT. Nevertheless, Ihenacho continued to attend classes at OIPT.

**{¶ 7}** In February of 2006, Ihenacho provided OIPT with a copy of his Permanent Resident Card and Visa which indicated his entry date into the United States. In so doing, Ihenacho satisfied the Selective Service requirement, thereby prospectively assuring his eligibility for federal financial aid. However, Ihenacho's satisfaction of the Selective Service requirement was not retroactive. Since the 2004-2005 award year was over, Ihenacho was not entitled to financial aid during that time, and OIPT could not credit him for the financial aid award that it was required to refund to the Department of Education.

**{¶ 8}** OIPT asserted that it unsuccessfully attempted multiple times to contact Ihenacho in order to address his unpaid tuition balance, but he failed to make any payments or obtain alternative funding for his educational expenses for the award year of 2004-2005. In late May or early June of 2006, OIPT cancelled Ihenacho's enrollment in light of the unpaid tuition balance. According to OIPT, Ihenacho was informed that he owed approximately $16,194.00 in unpaid tuition. As a result, Ihenacho was not permitted to take his final examinations and complete the degree program.

**{¶ 9}** Ihenacho subsequently attempted to enroll at Southwestern College and

Urbana University. OIPT, however, refused to forward his transcript, and Ihenacho was denied admittance to both schools.

{¶ 10} Ihenacho filed a complaint against OIPT on April 23, 2009. On May 21, 2009, OIPT filed a motion for a more definitive statement, which the trial court granted on August 6, 2009. In response, Ihenacho filed his "Reply Memorandum " on August 11, 2009, which the trial court accepted as his amended complaint, in which he alleged that OIPT breached its enrollment agreement when it terminated him as a student. The trial court noted that Ihenacho "asserted claims against [OIPT] for what presumably are breach of contract, intentional or negligent infliction of emotional distress, conversion, fraud, negligence, discrimination, and punitive damages." On September 14, 2009, OIPT filed an answer, as well as several counterclaims against Ihenacho, alleging action on account, breach of contract, and unjust enrichment. Essentially, OIPT argued that Ihenacho was in breach for failure to pay the tuition balance on his account left due when OIPT was forced to return his financial aid to the Department of Education in light of his failure to satisfy the Selective Service requirement.

{¶ 11} Ihenacho failed to file an answer or other responsive pleading to OIPT's counterclaims, and on November 3, 2009, OIPT filed a motion for default judgment on its counterclaims and a motion for judgment on the pleadings. On November 13, 2009, Ihenacho filed his answer and a motion to dismiss OIPT's motion for default judgment. OIPT filed a motion to strike all of Ihenacho's responsive pleadings, including his answer, on December 4, 2009. On January 10, 2010, the trial court granted OIPT's motion to strike. On January 29, 2010, the court granted OIPT's motion for default judgment on its

counterclaims, finding that Ihenacho's reasons for failing to timely file his answer did not constitute excusable neglect. The trial court also granted OIPT's motion for judgment on the pleadings in part, thereby dismissing Ihenacho's claims for conversion, intentional or negligent infliction of emotional distress, fraud, discrimination, and punitive damages. The trial court denied OIPT's motion for judgment on the pleadings regarding Ihenacho's claims for negligence and breach of contract.

{¶ 12} On June 18, 2010, OIPT filed a motion for summary judgment with respect to Ihenacho's remaining claims for negligence and breach of contract. The trial court sustained OIPT's motion for summary judgment in its entirety in a decision issued on August 3, 2010. In the same decision, the trial court overruled Ihenacho's motion to strike the affidavit testimony of Patricia Shoope, attached in support of OIPT's motion for summary judgment.

{¶ 13} Ihenacho's appeal is now properly before this Court.

II

{¶ 14} Initially, we note that Ihenacho has failed to comply with the requirements of Rule 16 of the Ohio Rules of Appellate Procedure. Pursuant to App. R. 16(A)(3) & (4), an appellate brief must contain a statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected, as well as a statement of the issues presented for review. Ihenacho's brief does contain a section where he lists his "Arguments (A)" and "(B)." In section (A), Ihenacho specifically states that the trial court erred when it granted OIPT's motion for default judgment, motion for judgment on the pleadings, and motion for summary judgment. In section (B), Ihenacho argues that the trial

court erred when it overruled his motion to strike the affidavit of Patricia Shoope. Ihenacho's brief, however, fails to provide any supporting legal or factual citations as required by App. R. 16(A)(7) regarding his assertions that the court erred when it granted OIPT's motion for judgment on the pleadings and motion for summary judgment.

{¶ 15} Under App. R. 12(A)(2), an appellate court may refuse to consider Ihenacho's assigned errors. The rules are applicable to all parties whether or not they proceed on a pro se basis. While we are mindful that such omissions authorize this court to either strike the offending portions of Ihenacho's brief or sua sponte dismiss his appeal for failure to comply with App. R. 16, in the interests of justice, we will review the merits of Ihenacho's claims.

III

{¶ 16} Ihenacho's assignments in "Arguments: (A)" are as follows:

**The trial court erred when it granted OIPT's motion for default judgment.**

{¶ 17} In his first argument, Ihenacho contends that the trial court erred when it granted OIPT's motion for default judgment because he provided sufficient evidence of excusable neglect.

{¶ 18} "Civ.R. 12(A)(1) provides that a defendant shall serve his answer within twenty-eight days after service of the complaint. Pursuant to Civ.R. 6(B), *upon motion made after the expiration of the specified period,* the trial court may permit a defendant to file an answer if his failure to do so was the result of excusable neglect. Although Civ.R. 6(B) grants broad discretion to the trial court, its discretion is not unlimited. *Miller v. Lint* (1980), 62 Ohio St.2d 209, 214 * * *. Generally, some showing of excusable neglect is a necessary prelude to the filing of an untimely answer." *Alldred v. Alldred* (Nov. 6, 1998), Montgomery

App. No. 17043.

{¶ 19} "Neglect under Civ.R. 6(B)(2) has been described as conduct that falls substantially below what is reasonable under the circumstances." *Davis v. Immediate Medical Services, Inc*., 80 Ohio St.3d 10, 14, 1997-Ohio-363. "The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds." *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs*., 72 Ohio St.3d 464, 466, 1995-Ohio-49, citing *Marion Production Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 271. "Although excusable neglect cannot be defined in the abstract, the test for excusable neglect under Civ.R. 6(B)(2) is less stringent than that applied under Civ.R. 60(B)." Id.

{¶ 20} Ihenacho filed his amended complaint on August 11, 2009. On August 28, 2009, OIPT was granted an extension of time by the trial court in which to file its answer to Ihenacho's amended complaint. OIPT filed its answer, as well as its counterclaims for action on account, breach of contract, and unjust enrichment, on September 14, 2009. Ihenacho did not file an answer or other responsive pleading within the twenty-eight day window provided by Civ.R. 12(A)(1), that date being October 13, 2009. On November 3, 2009, approximately three weeks after the twenty-eight day deadline, OIPT filed a motion for default judgment and a motion for judgment on the pleadings.

{¶ 21} Ihenacho did not file a motion to dismiss OIPT's motion for default judgment until November 13, 2009. In his motion to dismiss, Ihenacho argued that he had to travel out of state to Maryland to retrieve an automobile. Ihenacho stated that he left on

November 5, 2009, and returned to Ohio on November 6, 2009. Ihenacho attached copies of hotel and gas station receipts in support of his assertion. Ihenacho also argued that he was acting as a pro se litigant and should be afforded lenient treatment by the trial court.

{¶ 22} Upon review, we conclude that the trial court did not abuse its discretion when it granted OIPT's motion for default judgment finding that Ihenacho had failed to establish that his failure to file a timely answer was caused by excusable neglect. Ihenacho stated that he was out of town on November 5 & 6, 2009, a two-day period falling approximately three weeks after his answer was due. More importantly, Ihenacho provided no explanation regarding why he failed to file his answer between September 14, 2009, and October 13, 2009.

{¶ 23} We also note that Ihenacho's pleas for leniency are not well taken. "Litigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standard as other litigants." *Yocum v. Means*, Darke App. No. 1576, 2002-Ohio-3803. A litigant proceeding pro se "cannot expect or demand special treatment from the judge, who is to sit as an impartial arbiter." Id. (Internal citations omitted). Thus, the trial court did not err when it granted OIPT's motion for default judgment regarding its counterclaims.

**(2) The trial court erred when it granted OIPT's motion for judgment on the pleadings regarding Ihenacho's claims for conversion, fraud, discrimination, and emotional distress.**

{¶ 24} In his second argument, Ihenacho asserts that the trial erred when it granted OIPT's motion for judgment on the pleadings regarding Ihenacho's claims for conversion,

fraud, discrimination, and emotional distress.

{¶ 25} Civ. R. 12(C) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A copy of any written instrument attached to a pleading is a part of the pleading for all purposes." Civ.R. 10(C). "A motion for judgment on the pleadings pursuant to Civ.R. 12(C) presents only questions of law," and the standard of review is de novo. *Dearth v. Stanley*, Montgomery App. No. 22180, 2008-Ohio-487. "Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165. Dismissal is appropriate under Civ.R. 12(C) when, after construing all material allegations in the complaint, along with all reasonable inferences drawn therefrom in favor of the nonmoving party, the court finds that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontius* (1996), 75 Ohio St.3d 565, 570." Id.

**Conversion**

{¶ 26} Conversion is an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96; *Union Savings Bank v. The White Family Cos., Inc.*, 167 Ohio App.3d 51, 2006-Ohio-2629. Typically, "[t]he elements of a conversion cause of action are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Haul Transport of VA, Inc. v Morgan* (June 2, 1995),

Montgomery App. No. 14859; see *Knoop v. Knoop*, Montgomery App. No. 22037, 2007-Ohio-5178, ¶20. Where conversion is premised on the unlawful retention of property, the plaintiff must establish: "(1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Barnes v. First American Title Ins. Co.* (N.D. Ohio, Aug. 8, 2006), Case No. 1:06CV574, citing *Tabar v. Charlies's Towing Serv., Inc.* (1994), 97 Ohio App.3d 423, 427-28. Where an action for conversion is based on the conversion of cash, the action will lie "only if 'identification is possible and there is an obligation to deliver the specific money in question.'" *Haul,* Montgomery App. No. 14859.

{¶ 27} Ihenacho argues that OIPT is liable for conversion based on its refusal to send his transcripts to Southwestern College and Urbana University, thereby depriving him of his property rights. Other than his bare assertion that his rights were violated when OIPT withheld his transcripts, Ihenacho fails to provide us with any legal authority that he was the rightful owner of the transcripts at the time OIPT refused to release the documents. "*** A university may withhold a transcript if arrangements to repay the loan or discharge the debt are lacking." *Juras v. Aman Collection Serv.* (C.A. 9, 1987), 829 F.2d 739, 743; citing *Johnson v. Edinboro State College* (C.A. 3, 1984), 728 F.2d 163. OIPT was within its rights to withhold the transcripts until it received payment from Ihenacho on the unpaid tuition balance. Thus, the trial court did not err when it dismissed Ihenacho's claim for conversion.

**(b) Fraud**

{¶ 28} Under Civ. R. 8(A), a complaint or other pleading, such as a counterclaim, that sets forth a claim for relief "shall contain a short and plain statement of the claim showing that the party is entitled to relief." However, where a pleading sets forth a claim of fraud or mistake, Civ.R. 9(B) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." *Sutton Funding, L.L.C. v. Herres*, 188 Ohio App.3d 686, 697, 2010-Ohio-3645.

{¶ 29} A claim for common law fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169; *Collins v. National City Bank*, Montgomery App. No. 19884, 2003-Ohio-6893, ¶39.

{¶ 30} "Failure to specifically plead the operative facts constituting an alleged fraud presents a defective claim that may be dismissed. *Universal Coach, Inc. v. New York Transit Authority, Inc.* (1993), 90 Ohio App.3d 284. The 'particularity' requirement of Civ.R. 9(B) means that the pleading must contain allegations of fact which tend to show each and every element of a cause of action for fraud." *Rieger v. Podeweltz*, Montgomery App. No. 23520, 2010-Ohio-2509, ¶9.

{¶ 31} Ihenacho argued in his complaint that he was somehow misled by OIPT into thinking that he would be allowed to attend classes even if he had an unpaid, outstanding

tuition balance. Ihenacho, however, fails to specify when OIPT or anyone acting on its behalf informed him that he would not be responsible for tuition if he did not have financial aid. Additionally, Ihenacho specifically stated that he was informed by school officials that he would not be allowed to attend classes if he failed to pay his outstanding tuition balance. Upon review, we find that Ihenacho has failed to specifically plead any operative facts constituting an alleged fraud. Thus, the trial court did not err when it dismissed his claim for fraud.

**(c) Discrimination**

{¶ 32} In his complaint, Ihenacho supports his claim for discrimination by simply stating that "the school might be playing racial/minorities discrimination."

{¶ 33} R.C. 4112.02 provides that it is an unlawful discriminatory practice:

{¶ 34} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 35} A claim of discrimination may be proven by either direct or circumstantial evidence. *Byrnes v. LCI Communication Holdings Co.,* 77 Ohio St.3d 125, 128, 1996-Ohio-307. To establish a discrimination claim based upon circumstantial evidence, a plaintiff must initially demonstrate a prima facie case of discrimination. Id. at 128, citing *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146 (adopting the guidelines set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668);

*Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723.

{¶ 36} Other than his bare assertion in that regard, Ihenacho provided no factual basis for his claim that there "might" be some racial discrimination. Without any additional facts to support his claim, Ihenacho has not demonstrated a prima facie case of discrimination. Accordingly, Ihenacho's statement regarding OIPT's alleged discriminatory behavior is insufficient to constitute a valid claim for racial discrimination, and the trial court did not err when it dismissed his claim.

### (d) Negligent and/or Intentional Infliction of Emotional Distress

{¶ 37} In order to be actionable on a claim of intentional infliction of emotional distress, an actor's conduct must be extreme and outrageous. *Hanley v. Riverside Methodist Hospital* (1991), 78 Ohio App.3d 73. To satisfy that standard, the acts concerned must by their nature go beyond all possible bounds of decency so as to be considered utterly intolerable in a civilized community. *Pyle v. Pyle* (1983), 11 Ohio App.3d 31. Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union* 20 (1983), 6 Ohio St.3d 369, 375.

{¶ 38} Upon review, we conclude that Ihenacho failed to make sufficient factual allegations in order to constitute a claim for intentional infliction of emotional distress. Ihenacho has failed to allege facts that OIPT possessed the requisite intent to cause him severe emotional distress, or that OIPT's actions were so outrageous as to go beyond all possible bounds of decency. Additionally, we have recently noted that under Ohio law, plaintiffs cannot recover damages for emotional distress from a breach of contract. *Hacker v.*

*Natl. College of Business and Technology*, 186 Ohio App.3d 203, 2010-Ohio-380. Accordingly, Ihencaho has failed to plead sufficient facts to support a claim for intentional infliction of emotional distress.

{¶ 39} In *Potter v. RETS Tech Center Co., Inc.*, Montgomery App. No. 22012, 22014, 2008-Ohio-993, we stated the following:

{¶ 40} "The availability of a claim for relief for negligent infliction of emotional distress was first recognized in Ohio in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72. In that case, serious emotional distress was allegedly suffered by a parent who feared her children were in peril when automobiles accidentally left the road and collided into her home. The issue was whether the emotional distress the parent allegedly suffered was reasonably foreseeable to the drivers, when the parent suffered no physical harm.

{¶ 41} "Cases in which claims for relief for negligent infliction of emotional distress have been held to lie have, like *Paugh v. Hanks*, involved distress suffered by a bystander who witnessed a sudden and shocking event, such as an auto accident, that did or reasonably could result in injury to other persons. We have held that one who witnesses the negligent damaging of his property over a period of time arising out of the ongoing negligence of the defendant may not recover for emotional distress experienced as a result. *Reeser v. Weaver Brothers* (1989), 54 Ohio App.3d 46. Further, when the distress which is suffered is a part of the harm directly and proximately resulting from underlying event, a separate claim for relief for the distress allegedly suffered will not lie."

{¶ 42} In *Potter*, we held that a claim for negligent infliction of emotional distress does not lie on account of an individual's termination as a student by a school or learning

institution. Thus, the trial court did not err when it dismissed Ihenacho's claim for negligent infliction of emotional distress.

**(3) The trial court erred when it granted OIPT's motion for summary regarding Ihenacho's claims for breach of contract and negligence.**

{¶ 43} In his third argument, Ihenacho contends that the trial court erred when it granted OIPT's motion for summary judgment regarding his remaining claims for breach of contract and negligence.

{¶ 44} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 12.

{¶ 45} Pursuant to Civil Rule 56(C), summary judgment is proper if:

{¶ 46} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293. The non-moving party must then

present evidence that some issue of material fact remains for the trial court to resolve. Id.

**Breach of Contract**

{¶ 47} Ihenacho argues that OIPT had a contractual obligation to ensure that his tuition was completely covered by financial aid. Further, Ihenacho asserts that OIPT breached its enrollment contract with him when it terminated him as a student after he failed to pay off the outstanding balance on his tuition bill.

{¶ 48} "The essential elements of a cause of action for breach of contract are the existence of a contract, performance by the plaintiff, breach by the defendant and resulting damage to the plaintiff." *Flaim v. Med. College of Ohio*, Franklin App. No. 04AP-1131, 2005-Ohio-1515, at ¶ 12.

{¶ 49} The construction of written contracts is a matter of law, *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, paragraph one of the syllabus, and a trial court's construction of a contract is reviewed de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 1995-Ohio-214. The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in the agreement. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 1996-Ohio-393. When terms of a contract are unambiguous, courts look to the plain language of the document. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214. The contract must also be interpreted as a whole, with the intent of each part gathered from a consideration of the whole. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, at ¶16.

{¶ 50} "An agreement altering the rights of the parties under a written contract must

be based on sufficient consideration. Likewise, an agreement to modify a contract requires consideration. Thus, an oral agreement to modify a prior written agreement must be founded on a new consideration that is distinct from the consideration supporting the prior agreement; it cannot be supported on the supposition that it is founded on the continuation or extension of the consideration of the prior written contract that is complete in itself." 17 Ohio Jurisprudence 3d (2008) 390, Contracts, Section 41 (citations omitted).

{¶ 51} Neither party disputes that the Educational Installment Contract and the Enrollment Agreement govern the parties' contractual relationship. OIPT's Educational Installment Contract, signed by Ihenacho on February 1, 2005, provided that grants in the amount of $14,276.00 and loans in the amount of $11,109.00 would pay Ihenacho's total program fees at the school. The Contract also provided as follows:

{¶ 52} "**PROMISE TO PAY**: You promise to pay us the Amount Financed together with finance charges at the Annual Percentage Rate disclosed in the Truth in Lending Disclosure Statement. Your finance charges begin to accrue 30 days prior to the date of your first payment.

{¶ 53} "**FINANCIAL AID PAYMENTS**: *If the amount of your financial aid changes or is not made as scheduled, then you agree to pay us upon our request the CASH PRICE that the financial aid would have paid."*

{¶ 54} The Installment Contract clearly required Ihenacho to pay the balance on his tuition bill, even if his financial aid did not supply payment in full. OIPT's Enrollment Agreement, signed by Ihenacho, specifically provided that the school had the right to cancel Ihenacho's enrollment for "failure to meet financial obligations to [OIPT]." Upon

Ihenacho's prolonged failure to pay his outstanding tuition balance, OIPT had the right to cancel his enrollment. Although Ihenacho asserts that OIPT had a contractual obligation to ensure that his tuition was completely covered by financial aid, there is no evidence in the record that OIPT had such a duty under either the Installment Contract or the Enrollment Agreement. Rather, Ihenacho's obligation to pay his tuition was in no way contingent upon his receipt of financial aid. Ihenacho argues that the two Financial Aid Estimate Letters he received prior to his enrollment gave him the impression that he was not required to pay any amount of his tuition "out of pocket." The Estimate Letters, however, specifically state that they are only estimates. More importantly, the Estimate Letters in no way modify or negate Ihenacho's duty to pay his tuition to the school, as evidenced by the express requirements set out in the Installment Contract and the Enrollment Agreement.

{¶ 55} Under the express and unambiguous terms of the Installment Contract, Ihenacho was obligated to pay his tuition regardless of any financial award. We also note that Ihenacho failed to submit any evidence evidencing an intent on the part of OIPT to modify any of the express language in either the Installment Contract or the Enrollment Agreement. Viewed in a light most favorable to Ihenacho, we conclude that he has failed to establish that a genuine issue exists regarding his breach of contract claim.

**(b) Negligence**

{¶ 56} Ihenacho contends that the trial court erred when it held that no genuine issue existed regarding his claim for negligence against OIPT. Specifically, Ihehacho asserts that OIPT was negligent for failing to ensure that he was eligible for financial aid. In the alternative, Ihenacho argues that OIPT breached its duty to him when it returned the

financial aid that was distributed to Ihenacho, but for which he had failed to demonstrate his eligibility to receive.

{¶ 57} The Military Selective Service Act (MSSA) provides that a person who is required to register with the Selective Service but fails to do so "shall be ineligible for any form of assistance or benefit provided under Title IV of the Higher Education Act of 1965." 50 U.S.C. § 462(f)(1); *Maxwell v. NYU* (C.O.A. 2, December 8, 2010), 407 Appx. 524. § 462(f)(2) of the MSSA further requires applicants for Title IV assistance to file a statement with their school attesting to their compliance with the registration requirements. *Martin v. Moran* (W.D. Mich. 1990), U.S. Dist. Case No. 1:89-CV-827. *"If the student does not file the Statement, the school 'may not' provide aid."* Id.; citing 34 C.F.R. § 668.33(a)(1).

{¶ 58} In the instant case, Ihenacho was notified in two separate ISIRs that his failure to register with Selective Service jeopardized his financial aid eligibility. Both ISIRs were sent to the address Ihenacho provided on his FAFSA and his Enrollment Agreement with OIPT. Pursuant to statutory mandate, Ihenacho had a duty to ensure that he satisfied the Department of Education's financial aid eligibility requirements by providing a Statement of Registration status that he either registered with Selective Service, or that he was exempt for a specific reason, in order to receive federal student financial assistance. Because Ihenacho failed to satisfy the eligibility requirements, OIPT had no other choice but to refund his financial aid back to the Department of Education.

{¶ 59} There is no evidence in the record that Ihenacho complied with the Selective Service requirement until February of 2006, well after OIPT was forced to refund his financial aid due to his failure to prove his statutory eligibility. OIPT presented undisputed

evidence that Ihenacho, for unknown reasons, failed to register with Selective Service for the award year of 2004-2005 until it was too late to cure. OIPT also presented evidence that it was Ihenacho's duty, not OIPT's, to ensure that he fulfilled all of the Department of Education's statutory requirements to prove his eligibility for federal financial aid. In light of the foregoing, Ihenacho had failed to establish that a genuine issue exists regarding his claim against OIPT for negligence, and the trial court did not err when it granted OIPT's motion for summary judgment on his claims for breach of contract and negligence.

IV

{¶ 60} Ihenacho's assignments in "Arguments: (B)" are as follows:

**The trial court erred by allowing Patricia Shoope to testify at the damages hearing held April 22, 2010, since she did not have personal knowledge of Ihenacho's tuition account with OIPT.**

{¶ 61} Initially, we note that Ihenacho has failed to file a written transcript of the damages hearing. Thus, we are unable to review Shoope's testimony regarding the status of Ihenacho's tuition account at OIPT.

{¶ 62} In reviewing an assigned error on appeal, pursuant to App. R. 12(A)(1)(b), we are confined to the record that was before the trial court as defined in App. R. 9(A). See *Lamar v. Marbury* (1982), 69 Ohio St.2d 274, 277, 431 N.E.2d 1028. App. R. 9(A) identifies the record on appeal as consisting of "the original papers and exhibits thereto filed in the trial court, *the transcript of the proceedings*, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court ***."

{¶ 63} App. R. 9(A) provides if the transcript of the proceedings is in the video tape

medium, counsel for appellant shall print or type those portions of the transcript necessary for the court to determine the questions presented, shall certify their accuracy, and append such copy of the portions of the transcript to the brief. Additionally, App. R. 9(B) imposes the duty on an appellant to file a transcript of the proceedings underlying the final order or judgment from which the appeal is taken and concerning which the appellant seeks appellate review. *State ex rel. Montgomery v. R & D Chem. Co.* (1995), 72 Ohio St.3d 202, 1995-Ohio-21. If the transcript is not included in the record, the court of appeals must presume the validity of the trial court's proceedings unless error of law is demonstrated. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199.

{¶ 64} "A party challenging a trial court's judgment has the duty under App.R. 9(B) and 10(A) to properly file a record of the proceedings with the reviewing court to demonstrate its claims of error. *Rose Chevrolet, Inc. V. Adams* (1988), 36 Ohio St.3d 17, 19 * * * . 'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.' *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 200 * * * ." *Chester v. Commsys, Inc.* (April 7, 2000), Montgomery App. No. 17793.

{¶ 65} Ihenacho's brief does not comply with the appellate rules, and given the absence of a written transcript of the record of the damages hearing, we must presume the validity of the trial court's proceedings, in particular the court's decision to allow Shoope to testify regarding her knowledge of Ihenacho's tuition account at OIPT.

**(2) The trial court erred when it considered the affidavit of Patricia Shoope that**

**was attached in support of OIPT's motion for summary judgment.**

{¶ 66} In his final assignment, Ihenacho contends that the trial court abused its discretion by considering the averments in Shoope's affidavit attached to OIPT's motion for summary judgment. Specifically, Ihenacho argues that Shoope did not have sufficient personal knowledge to testify regarding the contents of his financial aid file.

{¶ 67} Civ.R. 56(E) states that "supporting and opposing affidavits shall be made on personal knowledge, and shall set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein . . ." "'Personal knowledge' is defined as, 'knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay. Personal knowledge of an allegation in an answer is personal knowledge of its truth or falsity; and if the allegation is a negative one, this necessarily includes a knowledge of the truth or falsity of the allegation denied.' Black's Law Dictionary (6 Ed. 1990) 873, citing *Hidalgo v. General Fire & Cas. Co.* (La.App. 1971), 254 So.2d 493, 496." *Haack v. Bank One, Dayton, N.A.* (April 11, 1997), Montgomery App. No. 16131.

{¶ 68} In her affidavit, Shoope stated that as Regional Director of Financial Aid for Kaplan Higher Education, the parent company of OIPT, she had access to all former and present OIPT students' financial aid files, including Ihenacho's file. Shoope specifically stated that she had personal knowledge of the contents of Ihenacho's financial aid file.

{¶ 69} Ihenacho argues that Shoope did not personally prepare the financial aid documents about which she was testifying, but that argument is without merit. An individual with personal knowledge of a set of documents need not have created said

documents in order to testify as to the their authenticity. *Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618.   In the instant case, it was unimportant that Shoope did not personally create Ihenacho's financial aid records.   Shoope never claimed that she had any personal interaction with Ihenacho.   As Regional Director of Financial Aid for Kaplan, however, Shoope stated that she had the requisite personal knowledge of Ihenacho's financial aid file in order to testify as to its contents.   Other than his bare assertion that Shoope had no personal knowledge regarding his financial aid file, Ihenacho presented the trial court with no evidence upon which to challenge the statements made in her affidavit. Accordingly, the trial court did not err when it considered Shoope's affidavit in conjunction with OIPT's motion for summary judgment.

**{¶ 70}** Lastly, Ihenacho asserts on appeal that Shoope's affidavit testimony is hearsay and should not have been considered by the trial court as evidence for summary judgment.   Ihenacho, however, did not raise this issue before the trial court in his motion to strike Shoope's affidavit.   It is axiomatic that a party cannot raise new arguments for the first time on appeal. *State ex rel. Gutierrez v. Trumbull Cty. Bd. Of Elections* (1992), 65 Ohio St.3d 175, 177; *Miller v. Wikel Mfg. Co., Inc*. (1989), 46 Ohio St.3d 76, 78.   Thus, we need not address the merits of Ihenacho's argument in this regard.

V

**{¶ 71}** All of Ihenacho's assignment having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Kendall D. Isaac
Charles Ihenacho
Richard A. Talda
Sasha Alexa M. VanDeGrift
Hon. Mary Katherine Huffman