MITCHELL et al., Appellees,

v.

ELL et al., Appellants.

[Cite as *Mitchell v. Ell,* 157 Ohio App.3d 271, 2004-Ohio-2812.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2003–07–177.

Decided June 1, 2004.

Courtney W. Mitchell and William J. Sickmann, pro se.

Robert P. Ell and Wanda L. Ell, pro se.

POWELL, Judge.

{¶ 1} Defendants-appellants, Robert P. and Wanda L. Ell ("the Ells"), appeal from the judgment of the Butler County Area III Court granting a judgment to plaintiff-appellee, Courtney W. Mitchell, in the amount of $2,462.10. We affirm the trial court's judgment.

{¶ 2} In March 2002, the Ells hired Mitchell, an architect to develop a design plan for the renovation of their farmhouse. The Ells had interviewed several other architects, but settled on Mitchell for their project. The parties signed a contract entitled "Agreement for Design/Build Services." The contract designated an hourly rate at which the Ells would pay Mitchell, and also indicated that Mitchell would receive 15 percent of the project's construction costs.

{¶ 3} Several meetings took place between Mitchell and the Ells, the first occurring on February 28, 2002. Mitchell made measurements at the Ells' house, as well as preliminary drawings of the renovations. A general contractor, William Sickmann, was present at some of the meetings. Sickmann was working with Mitchell to estimate the construction costs of the project.

{¶ 4} In May 2002, the Ells asked Mitchell for an accounting of the hours he had worked. Mitchell eventually provided the Ells with an accounting, which indicated that Mitchell had spent 56 hours on the project at a cost to the Ells of $2,562.10. The Ells were shocked at the amount, which was much higher than they anticipated. They expressed that concern to Mitchell and asked him whether the total dollar amount included "working drawings." Mitchell indicated that it would cost an additional $2,450 for "working drawings."

{¶ 5} The Ells subsequently sent Mitchell a letter, terminating their contractual relationship. The Ells also enclosed a check for $600, what they considered to be a reasonable value for Mitchell's work. The Ells then hired another architect, who, according to the Ells, produced "working drawings" of the renovation for $615.

{¶ 6} Mitchell and Sickmann filed suit against the Ells in Butler County Area III Court, seeking $2,562.10 for the work completed pursuant to the contract. After a hearing, a magistrate awarded a judgment to Mitchell in the amount of

$2,462.10. The magistrate deducted $100 due to excessive secretarial costs claimed by Mitchell. The magistrate dismissed Sickmann as a party because he never entered into a contract with the Ells. The trial court overruled the Ells' objections and adopted the magistrate's decision.

{¶ 7} The Ells now appeal from the trial court's judgment, assigning two errors.

{¶ 8} Assignment of Error No. 1:

{¶ 9} "The trial court erred in barring the Ell's [sic] recoupment of excessive architectural fees defense, by determining that the Ells failed to file a counter-claim against Mr. Mitchell."

{¶ 10} In this assignment of error, the Ells argue that the trial court erred by failing to consider their Ohio Consumer Sales Practices Act defense. The Ells argue that they have a valid defense under the Act due to Mitchell's allegedly unconscionable and deceptive practices, and his failure to provide a cost estimate for the project. The Ells also assert the common-law defense of recoupment of excessive fees.

{¶ 11} In an exhibit presented to the trial court entitled "Ell's Opinion," the Ells stated as follows regarding the Consumer Sales Practices Act:

{¶ 12} "We think this instance is a possible violation of the Ohio Consumer Sales Practices Act. An Architect providing services, in a consumer transaction, while failing to provide his clients with an oral or written estimate at the start and then later invoicing them an excessive amount, would seem to have committed an unfair or unconscionable act. We are * * * asking the court to rescind our earlier agreement with Mr. Mitchell." Near the conclusion of the hearing before the magistrate, Mr. Ell made a similar argument to the one presented in the exhibit.

{¶ 13} In order to prove that Mitchell violated the Consumer Sales Practices Act, the Ells had to show that Mitchell committed an "unfair or deceptive" act under R.C. 1345.02(A) or an "unconscionable" act under R.C. 1345.03(A). The Ells cite Ohio Adm.Code 109:4–3–05, which provides as follows:

{¶ 14} "It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service where the anticipated cost exceeds twenty-five dollars and there has been face to face contact between the consumer or his representative and the supplier or his representative, prior to the commencement of the repair or service for a supplier to:

{¶ 15} "* * * Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form

which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service."

{¶ 16} The trial court determined that the Ells should have raised the Ohio Consumer Sales Practices Act issue as a counterclaim. Because the Ells did not raise the issue as a counterclaim, the trial court determined that the issue was not properly before the court, and that the magistrate did not err in failing to address it.

{¶ 17} It has been held that claims under the Ohio Consumer Sales Practices Act are not defenses, but must be brought as counterclaims. *Atelier Design, Inc. v. Campbell* (1990), 68 Ohio App.3d 724, 728, 589 N.E.2d 474. It is clear that the Ells did not bring an Ohio Consumer Sales Practices Act claim as a counterclaim. Rather, they asserted a defense at the hearing that Mitchell had violated the Act.[1]

{¶ 18} We also find that the Ells failed to prove the common-law defense of recoupment of excessive fees. For reasons more fully explained in our discussion of the Ells' second assignment of error, the Ells failed to offer sufficient proof that Mitchell's fees were excessive. Accordingly, the Ells' first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} "The trial court erred by holding that the Ells were required to provide expert testimony to prove that Mr. Mitchell's fees far exceeded his services rendered to the Ells."

{¶ 21} In this assignment of error, the Ells argue that the trial court erred by requiring expert testimony as to the reasonableness of Mitchell's fees. While the Ells concede that some cases involving professional fees require expert testimony, they assert that this case is not one of those cases. According to the Ells, the reasonableness of Mitchell's fee was not beyond the knowledge and experience of lay persons. The Ells assert that their exhibits clearly showed Mitchell's fees to be excessive, given the services he provided.

{¶ 22} Generally, expert testimony is admissible to assist the trier of fact in determining a contested issue. *State v. Koss* (1990), 49 Ohio St.3d 213, 216, 551 N.E.2d 970. Under Evid.R. 702(A), a witness can testify as an expert if, among other things, the witness's testimony either "relates to matters beyond the

---

1.  We do not rule on the issue, not addressed by the parties, of whether the Ells' dealings with Mitchell constituted a "consumer transaction" as defined in R.C. 1345.01(A).

knowledge or experience possessed by lay persons or dispels a misconception common among lay persons."

{¶ 23} In this case, the trial court determined that, without the assistance of expert testimony "establishing the standards in the industry," it had no way of determining whether Mitchell overcharged the Ells for his services. The trial court did not "require" expert testimony but found that the Ells could not prove the unreasonableness of Mitchell's fees without it.

{¶ 24} We now review the evidence presented at the hearing. Mitchell provided the Ells and the trial court with an accounting of the hours he spent on the Ells' renovation project. Mitchell's accounting included hours for meetings with the Ells, contract preparation, design drawing, phone calls with the Ells discussing the project, cost estimation, and consultation with the general contractor. Mitchell billed the Ells at different hourly rates, depending on whether he was using his architectural expertise, whether the work involved drafting or cost estimating, or whether the work was secretarial in nature. Pursuant to the contract, Mitchell charged $62.50 per hour for his architectural expertise, $35 per hour for drafting, cost estimating, and travelling to and from meetings, and $20 per hour for secretarial work, such as contract drafting.

{¶ 25} Mitchell's first meeting with the Ells was on February 28, 2002. His last meeting with the Ells was on May 24, 2002. During that time, Mitchell billed the Ells for 56 hours: 23 hours for his architectural expertise, 27 hours for drafting, cost estimating, and travel, and six hours for secretarial work. The total bill for these charges was $2,502.50. The magistrate reduced the secretarial hours from six to one. At the hearing, it became apparent that the six secretarial hours represented the time Mitchell spent drafting the parties' two-page contract and the one-page accounting.

{¶ 26} The Ells presented several additional exhibits at the hearing before the trial court. The Ells presented four pages of preliminary drawings completed by Mitchell, which they received from him at their request. Three of the pages contained drawings resembling floor plans, while the fourth, labeled "Elevations," contained three drawings of the exterior of the Ells' house. The Ells claimed that these drawings were the only items received from Mitchell.

{¶ 27} The Ells also presented an exhibit showing that another architect, R.W. Plikerd, billed them $615 for his services. The Ells testified that they received "working drawings" from Plikerd, exactly what they wanted to receive from Mitchell.

{¶ 28} Further, the Ells presented as an exhibit a letter from another architect, James Fearing, with whom they had consulted prior to hiring Mitchell. In the letter, Fearing stated that he would charge $1,700 for "measured floor plans and

elevations." The letter also indicated that he would charge $2,250 for "actual design plans of the renovations," which would require "about 25 hours of work." Further, the letter stated that if construction proceeded, he would charge up to 12 percent of the construction price, depending on how much additional involvement on his part was required.

{¶ 29} Additionally, the Ells presented as an exhibit a letter from Robin Savage, another architect whom the Ells contacted prior to hiring Mitchell. In the letter, Savage quoted a fee of nine percent of the construction cost.

{¶ 30} After reviewing the entire record, we cannot say that the trial court erred by ruling in Mitchell's favor. Absent expert testimony as to the reasonableness of Mitchell's fee, the court could not determine that Mitchell's fee was unreasonable. The Ells' exhibits alone were not sufficient to establish the unreasonableness of Mitchell's fees. While Plikerd charged them significantly less, the record does not show that he was hired to perform the same work. Under his contract with the Ells, Mitchell was obligated not only to complete "working drawings" but also to develop "concept designs," estimate the construction costs of the project, select the products and materials to create the project, and secure necessary permits. According to Mitchell's accounting, he spent a significant number of hours estimating costs, something Plikerd apparently did not do. Therefore, the fact that he charged more than Plikerd is not necessarily evidence of an unreasonable fee.

{¶ 31} Further, the letters from Fearing and Savage did not conclusively show that Mitchell's fees were unreasonable. The letters merely showed that those particular architects might have charged the Ells less money for their services. Additionally, Mitchell's accounting of his hours does not on its face prove that Mitchell's fees were unreasonable, absent testimony from an expert in the architectural field.

{¶ 32} We cannot say that the trial court erred by ruling in Mitchell's favor and by "requiring" expert testimony. The Ells did not offer sufficient proof that Mitchell's fees were unreasonable. Under the terms of the contract, Mitchell was entitled to the amount awarded in the judgment. Accordingly, we overrule the Ells' second assignment of error.

Judgment affirmed.

WILLIAM W. YOUNG, P.J., and VALEN, J., concur.