[Cite as *Rick's Foreign Exchange Co. v. Greenlee*, 2014-Ohio-4505.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

RICK'S FOREIGN EXCHANGE CO.

      Plaintiff-Appellee

v.

GLORIA GREENLEE

      Defendant-Appellant

Appellate Case No.    26096

Trial Court Case No.   2013-CVI-1880

(Civil Appeal from
 Municipal Court)

. . . . . . . . . . .

### O P I N I O N

Rendered on the 10th day of October, 2014.

. . . . . . . . . . .

RICK'S FOREIGN EXCHANGE CO., 5269 Cobblegate Boulevard, Moraine, Ohio 45439
     Plaintiff-Appellee-Pro Se

GLORIA GREENLEE, 6124 Clematis Drive, Dayton, Ohio 45449
     Defendant-Appellant-Pro Se

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Gloria Greenlee, appeals pro se from the decision of the Miamisburg Municipal Court granting judgment to plaintiff-appellee, Rick's Foreign Exchange Co., awarding it $2,143.64 in damages following a bench trial.   For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2}    Rick's Foreign Exchange Co. (Foreign Exchange), is a family-owned limited liability company located in Dayton, Ohio, that conducts an automotive repair business.   On December 11, 2013, the president of Foreign Exchange, Richard Reilich, filed a small claims complaint on behalf of the company against Gloria Greenlee for unpaid services in the amount of $2,143.64.   It is undisputed that Greenlee and her son Kiel were customers of Foreign Exchange in the spring of 2013, and that they reside in Miamisburg, Ohio.   A bench trial was subsequently scheduled for January 28, 2014, with both parties appearing pro se.

{¶ 3}    The following evidence was presented at trial.   In the spring of 2013, Kiel contacted Foreign Exchange to obtain a quote for the cost of labor to remove and replace an engine in his 1991 Nissan 300ZX.   Prior to receiving the quote, Kiel indicated that he had already purchased a rebuilt engine for the project.   Reilich's son, Ricky Reilich, orally quoted the cost of labor at $1,400.

{¶ 4}    On April 16, 2013, Kiel brought his vehicle to Foreign Exchange for the engine removal and replacement.   A Foreign Exchange technician removed the engine in the vehicle,

and upon doing so, noticed some problems with the vehicle. As a result, Foreign Exchange contacted Kiel and informed him of the problems with the vehicle. Kiel, however, declined all suggested repairs with the exception of replacing the engine wiring harness. Thereafter, when Kiel's replacement engine arrived, Foreign Exchange advised Kiel that the engine was not a rebuilt engine, but rather a used junk-yard engine. Kiel looked at the engine and agreed to have it sent back. Kiel then purchased a second engine from Moraine Auto Parts.

{¶ 5} Reilich testified that charges were incurred for examining and unloading the first engine, as it arrived in a truck without a lift gate. He further testified that the second engine they received from Moraine Auto Parts was in poor condition, which required them to partially tear down the engine in order to determine if it was a rebuild, as well as to strip off cut wires and other broken materials. After examining the engine, Reilich testified that Foreign Exchange decided not to install the second engine because it was missing a spark plug, had rust in the cylinder, and failed a cylinder leakage test. According to Reilich, the charges for the teardown and examination of the second engine were authorized by Kiel based on his instruction to install the engine.

{¶ 6} Continuing, Reilich then testified that Kiel and Greenlee came to the shop inquiring why the project was not complete, to which Reilich explained that Foreign Exchange had not been provided with a suitable replacement engine. He then told Kiel and Greenlee that they could buy a remanufactured engine through Foreign Exchange, and provided them with quote. It is undisputed that Kiel wrote Foreign Exchange a $2,500 check as a down payment for a remanufactured engine. However, a few days later, Greenlee and Kiel called and informed Reilich that they no longer wanted the remanufactured engine and wanted to pick up the vehicle.

**{¶ 7}** Reilich returned the $2,500 check to Greenlee, and explained that Foreign Exchange was going to have to charge them for the wiring harness and the time incurred, as they had removed the old engine, unloaded and inspected the first engine, inspected and tore down the second engine, and installed the subframe. All of this was reflected in a $2,143.63 invoice signed by Greenlee, which was admitted into evidence. Greenlee wrote Reilich at check for the invoice, but Reilich testified that she stopped payment on the check shortly thereafter.

**{¶ 8}** Kiel testified he contacted the seller of the first engine who claimed the engine was operable. However, Kiel admitted that he had agreed to have the first engine returned based on Foreign Exchange's advice. Kiel also testified that Moraine Auto Parts advised him that the second engine was from a junk yard, but that it was operable. Kiel further testified that Foreign Exchange never gave him an estimate for the teardown of the second engine and that he never authorized them to tear it down. Kiel also claimed he could not get Foreign Exchange to return his phone calls for three and one half weeks, and as a result, his car just sat in the shop because they did not install the second engine.

**{¶ 9}** In addition, Kiel testified that after obtaining his vehicle back from Foreign Exchange, he bought a third used junk-yard engine for $1,800 and that Brett Ramey, a Nissan certified mechanic, installed it for $2,500. According to Kiel, Ramey installed the engine through the top of the vehicle, and claimed that working from the bottom, as Foreign Exchange did, creates more work and leaves potential for damage. Kiel also testified that Ramey advised him that the original wiring harness did not need replaced as represented by Foreign Exchange; however, Kiel admitted that the wiring harness purchased from Foreign Exchange was used to install the engine replaced by Ramey.

{¶ 10} Kiel further testified that Ramey repaired damages caused by Foreign Exchange, including cut transmission lines and damaged air conditioning lines. Kiel provided no evidence of the alleged damages and Ramey did not appear at trial to offer expert testimony. Yet, Kiel did provide a $6,076.46 invoice from Ramey, which represents the cost of the engine replacement and the additional repairs.

{¶ 11} On January 29, 2014, the trial court issued a written decision granting judgment in favor of Foreign Exchange for $2,143.63 plus court costs. At no time did either of the parties request the trial court to issue findings of fact or conclusions of law. On February 20, 2014, Greenlee appealed from the judgment of the trial court, raising two assignments of error, and thereafter filed a motion to strike Foreign Exchange's appellate brief.

## Motion to Strike

{¶ 12} Greenlee contends Foreign Exchange's appellate brief should be stricken because it failed to comply with App.R. 13, 16, and 18. We note that App. R. 13(B) provides that "[c]opies of all documents filed by any party and not required by these rules to be served by the clerk shall, at or before the time of filing, be served by a party or person acting for the party on all other parties to the appeal." Furthermore, section (D) of App.R. 13 states that:

> Documents presented for filing shall contain an acknowledgment of service by the person served or poof of service in the form of a statement of the date and manner of service and of the names of the persons served, certified by the person who made service. Documents filed with the court shall not be considered until proof of service is endorsed on the documents or separately filed.

{¶ 13} In this case, Foreign Exchange's appellate brief does not contain an acknowledgment of service as required by App.R. 13(D). Greenlee claims that she was never served a copy of Foreign Exchange's brief, but that she discovered the document while checking the status of this appeal via Montgomery County's online public records system. Greenlee contends that the service failure prejudiced her because she was not notified of Foreign Exchange's filing and was unable to timely file a reply brief. Based on the foregoing, Greenlee's motion to strike is sustained; therefore, Foreign Exchange's appellate brief is stricken from the record and will not be considered in the determination of this appeal.

**Assignment of Error No. I**

{¶ 14} Greenlee's First Assignment of Error is as follows:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AS A LACK OF FINDING OF FACT AND FINDING OF LAW AGAINST CLEAR AND CONCISE STATU[T]ES THAT PROTECT THE CONSUMER.

{¶ 15} The arguments in Greenlee's pro se appellate brief are difficult to discern. Nevertheless, we presume that she is contending the trial court erred in failing to make any findings of fact or conclusions of law with respect to her Ohio Consumer Sales Practices Act (CSPA) allegations, as she maintains Foreign Exchange violated a number of CSPA provisions. In addition, Greenlee claims the trial court's decision granting judgment in favor of Foreign Exchange was against the manifest weight of the evidence.

{¶ 16} As it relates to Greenlee's claims that the trial court erred in failing to make findings of fact and conclusions of law, we note that pursuant to Civ.R. 52, a trial court is not

required to issue findings of fact and conclusions of law unless requested in writing. Pursuant to R.C. 1925.16, Civ.R. 52 applies equally to small claims proceedings. *Falkiewicz v. Blackburn*, 151 Ohio App.3d 562, 2003-Ohio-677, 784 N.E.2d 1204, ¶ 9 (2d Dist.). Therefore, as neither party in this case requested findings of fact or conclusions of law, the trial court did not err in failing to issue the same.

{¶ 17} Regardless, even if the trial court had been required to issue findings of fact and conclusions of law, it was not required to address the CSPA violations alleged by Greenlee, as she failed to raise them in a counterclaim. While small claims procedure does not contemplate the filing of an answer or other responsive pleading, *Pennington Paving, Inc. v. Bloedel*, 2d Dist. Greene No. 2009CA2, 2009-Ohio-2425, ¶ 13, it does contemplate the filing of counterclaims.

{¶ 18} R.C. 1925.02(C) states that: "Any person who files a counterclaim or cross-claim shall file it with the small claims division and serve it on all other parties at least seven days prior to the date of the trial of the plaintiff's claim in the original action." Additionally, R.C. 1925.05(A) provides that notice of the small claims filing served on the defendant must state: "If you believe you have a claim against the plaintiff, you must file a counterclaim with the court and must serve the plaintiff and all other parties with a copy of the counterclaim at least seven days prior to the date of the trial of the plaintiff's claim." Furthermore, claims under the CSPA must be brought in the form of a cause of action; therefore, they may be brought as a counterclaim, but not as a defense. *Atelier Design*, *Inc. v. Campbell*, 68 Ohio App.3d 724, 728, 589 N.E.2d 474 (2d Dist.1990).

{¶ 19} Here, Greenlee was served notice of Foreign Exchange's small claims complaint, which specifically stated that: "Any counterclaim against the Plaintiff * * * must be filed with the

Clerk and served on Plaintiff at least seven (7) days prior to the above trial date." Small Claims Complaint (Dec. 11, 2103), Miamisburg Municipal Court Case No. 13CVI01880, Docket No. 2, p. 1. The record establishes that Greenlee did not file any counterclaim, let alone a CSPA counterclaim. While the alleged CSPA violations are briefly alluded to during trial, Greenlee never formally asserted them as part of a counterclaim, nor did she articulate the specific provisions that Foreign Exchange allegedly violated. Rather, Greenlee improperly used the alleged CSPA violations as a defense.

{¶ 20} Because Greenlee's CSPA claims were not properly raised before the trial court, the court did not err in failing to address them. *See Mitchell v. Ell*, 157 Ohio App.3d 271, 2004-Ohio-2812, 810 N.E.2d 986, ¶ 10, 16-18 (12th Dist.) (finding the trial court did not err in failing to address a CSPA issue that was raised as a defense as opposed to a counterclaim). We also need not address the CSPA allegations, as "it is axiomatic that a party cannot raise new arguments for the first time on appeal." *Ihenacho v. Ohio Inst. of Photography & Technology*, 2d Dist. Montgomery No. 24191, 2011-Ohio-3730, ¶ 70, citing *State ex rel. Gutierrez v. Trumbull Cty. Bd. Of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992). (Other citation omitted.)

{¶ 21} As for Greenlee's manifest weight challenge, it is now well-established that appellate courts apply the same manifest-weight-of-the-evidence standard in criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. In turn, when a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the

trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 22} In a manifest-weight analysis, the credibility of the witnesses and the weight to be given to their testimony are primarily for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "Because the factfinder, be it the jury, or, * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *5 (Aug. 22, 1997).

{¶ 23} With the foregoing standard in mind, we conclude that the judgment in favor of Foreign Exchange is not against the manifest weight of the evidence. There is no dispute that Kiel requested Foreign Exchange to remove and replace the engine in his vehicle, and that Kiel was to provide the replacement engine. The record clearly establishes that Foreign Exchange removed the original engine as requested and thereafter waited for Kiel to provide a good replacement engine. The record indicates that additional expenses were incurred due to Kiel's replacement engines being in poor condition. Reilich further testified that the first engine had to be unloaded from a truck without a lift gate and be examined, and the second engine had to be examined and torn down to determine whether it should be installed. Reilich also testified that

Kiel agreed to have Foreign Exchange replace the engine wiring harness and that a new wiring harness was ordered, which Kiel testified that he was able to use. In addition, Reilich's son, Ricky, also testified that he always replaces Nissan engines by removing the subframe and taking the engine out from the bottom.

{¶ 24} The removal of the engine, the unloading and inspection of the first engine, the tear down and inspection of the second engine, the charge for the wiring harness, and the installation of the subframe are all accounted for as work performed in the $2,143.64 invoice provided to Greenlee and Kiel. At no time did Greenlee deny Reilich's claim that she stopped payment of the $2,143.64 check she provided him. The fact that the trial court found Reilich and his son credible and believed their testimony regarding the work they performed does not mean the court's judgment was against the manifest weight of the evidence. As the trier of fact in this case, the trial court was free to believe some, all, or none of Greenlee and Kiel's testimony and was free to give more credence to the testimony of Reilich and his son Ricky.

{¶ 25} For the foregoing reasons, Greenlee's First Assignment of Error is overruled.

**Assignment of Error No. II**

{¶ 26} Greenlee's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY CONDUCTING ITS HEARING IN A MANNER THAT DID NOT ONLY APPEAR TO BE PARTIAL BUT WAS IN FACT PARTIAL TOWARDS THE PLAINTIFF.

{¶ 27} Under this assignment of error, Greenlee contends the trial court conducted trial

in a biased, unfair manner that was partial to Reilich and Foreign Exchange.   We disagree.

{¶ 28}  Judicial bias is defined as " 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and facts.' "   *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.  (Other citation omitted.)  Trial judges are " 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.' "   *Eller v. Wendy's Internatl., Inc.*, 142 Ohio App.3d 321, 340, 755 N.E.2d 906 (10th Dist.2000), quoting *Okocha v. Fehrenbacher*, 101 Ohio App.3d 309, 322, 655 N.E.2d 744 (8th Dist.1995).  (Other citation omitted.)   "[T]he appearance of bias or prejudice must be compelling to overcome these presumptions." (Citation omitted.)  *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5.

{¶ 29}  The trial court has discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth * * *."  Evid.R. 611(A).  Additionally, a trial court "may interrogate witnesses, in an impartial manner, whether called by itself or by a party."  Evid.R. 614(B).   " '[I]n the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony,' we presume that trial courts act [with] impartiality by asking questions from the bench, to learn material facts or develop the truth."  *Easterling v. Easterling*, 2d Dist. Montgomery No. 18523, 2001 WL 369734, *2 (April 13, 2001), quoting *Jenkins v.*

*Clark*, 7 Ohio App.3d 93, 97, 454 N.E.2d 541 (2d Dist.1982).

**{¶ 30}** "Further, during a bench trial, a trial court enjoys even greater freedom in questioning witnesses because the court cannot prejudicially influence a jury with its questions or demeanor." (Citations omitted.) *Brothers v. Morrone-O'Keefe Dev. Co.*, 10th Dist. Franklin No. 05AP-161, 2006-Ohio-1160, ¶ 11. "A trial court's questioning of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the interrogation was damaging to one of the parties." (Citation omitted.) *Klasa v. Rogers*, 8th Dist. Cuyahoga No. 83374, 2004-Ohio-4490, ¶ 32.

**{¶ 31}** We review a trial court's questions under an abuse of discretion standard. *State v. Johnson*, 10th Dist. Franklin No. 03AP-1103, 2004-Ohio-4842, ¶ 10. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 32}** Initially, Greenlee claims the trial court was biased because the judge made a statement at trial that his grandfather and father were mechanics. Upon reviewing the record, we do not find the trial court's statement rises to the level of bias, as the judge was merely explaining why he was asking Reilich about the price of an engine wiring harness. *See* Trans. (Jan. 28, 2014), p. 15-16.

**{¶ 33}** In addition, Greenlee claims the trial court showed bias when it said at the beginning of trial that it would not make copies of the exhibits for the parties, and then later made copies for Foreign Exchange. This argument has no merit, because the record indicates the trial

court also made copies of an invoice for Greenlee after Kiel indicated he wanted to admit that document into evidence as Defendant's Exhibit B. *See Id.* at 43.

{¶ 34} Next, Greenlee claims the trial court showed bias by leading Reilich through his testimony and by hindering the presentation of her defense. As previously noted, a trial court is permitted to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. Evid.R. 611(A). In this instance, the trial court was presented with two pro se parties that needed extra guidance in presenting their cases. The trial court attempted to provide this guidance by alerting them as to when they could and could not ask questions and by interrogating the witnesses itself. The record indicates the trial court gave each party equal guidance in presenting its case. In addition, the record indicates that the bias Greenlee complains of was nothing more than the trial court attempting to facilitate an orderly pro se trial. While the trial court may have expressed certain opinions about the testimony, the record indicates that the court's statements and questions do not amount to an error requiring this matter be reversed.

{¶ 35} Finally, Greenlee claims the trial court was biased and unfair because it would not allow her to present the alleged CSPA violations in her defense. As discussed under the First Assignment of Error, a violation of the CSPA is not a defense, but a cause of action. *Atelier Design, Inc.*, 68 Ohio App.3d at 728, 589 N.E.2d 474. Therefore, because Greenlee never filed a counterclaim alleging CSPA violations, those arguments were irrelevant to trial and it was not improper for the trial court to prohibit her from addressing them.

{¶ 36} For the foregoing reasons, Greenlee's Second Assignment of Error is overruled.

**Conclusion**

{¶ 37}  Having overruled both of Greenlee's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurring:

{¶ 38}  In my view, Greenlee was not asserting a counterclaim under the CSPA as she did not seek damages.  Rather, Greenlee was offering a defense of illegality and/or fraud to Foreign Exchange's contract claim.  Thus, the trial court was required to consider Greenlee's defenses.

{¶ 39}  Further, in my view, Civ.R. 8(C) permitted the trial court to grant a continuance to Greenlee in order to provide appellee the requisite seven days notice of any alleged CSPA violations constituting a counterclaim, which would warrant rescission of the contract.  But Greenlee never requested a continuance, thus any such argument has been waived.  Absent the seven days notice requirement under R.C. 1925.02(C), Civ.R. 8(C) would have permitted the trial court, in "the interest of justice" to consider any counterclaim mistakenly asserted as a defense, as a defense.  I'd note the *Atelier Design Inc.* case cited by the majority did NOT consider the "interest of justice" provision of 8(C).

{¶ 40}  Finally, I concur in the affirmance of judgment by the majority because the trial court was free to reject Greenlee's testimony regarding her signature on Exhibit 1, a written estimate.  Her signature on Exhibit 1, dated April 16, 2014 would support the judgment in favor

of Foreign Exchange for $2,143.63 plus costs.   Accordingly, I would affirm but for reasons other than those articulated by the majority.

. . . . . . . . . .

Copies mailed to:

Rick's Foreign Exchange Co.
Gloria Greenlee
Hon. Robert W. Rettich, III