[Cite as *Burke v. Queen*, 2021-Ohio-3619.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LEEANNE BURKE | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J. |
| Petitioner-Appellee | Hon. Earle E. Wise, Jr., J. |
| -vs- | Case No. 21 CAE 02 0009 |
| CRYSTAL QUEEN | |
| Respondent-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:　　Appeal from the Delaware County Court
of Common Pleas, Case No. 20 CVH 09
0379


JUDGMENT:　　　　　　　　　　Affirmed


DATE OF JUDGMENT ENTRY:　　October 5, 2021


APPEARANCES:


For Petitioner-Appellee　　　　　　For Respondent-Appellant

ADAM HUBBLE　　　　　　　　　GEOFFREY SPALL, ESQ.
Brenner Hubble, LLC　　　　　　　Law Office of Geoffrey Spall, LLC
555 Metro Place North　　　　　　43 South Franklin Street
Dublin, Ohio 43017　　　　　　　Delaware, Ohio 43015

*Hoffman, P.J.*

**{¶1}** Respondent-appellant Crystal D. Queen appeals the judgment entered by the Delaware County Common Pleas Court granting Petitioner-appellee Leann D. Burke a civil stalking protection order, and the judgment overruling Queen's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Burke has a child with Queen's son, making Queen the grandmother of Burke's child. Queen's son has a history of drug use. As a result, in December of 2019, Burke informed Queen and Queen's son they would only have supervised visits with the child.

**{¶3}** Despite Burke's request, Queen came to Burke's home uninvited to see the child on multiple occasions. In December of 2019, shortly after being asked not to come to Burke's home uninvited, Queen showed up uninvited as Burke was getting ready for work. When Burke told Queen it was not a good time for a visit, Queen became upset.

**{¶4}** On April 21, 2020, Queen texted Burke she had a gift for the child's birthday. Burke asked Queen to leave the gift at the door. Instead, Queen knocked on the door, and was allowed inside by another child of Burke's who resided in the home. Queen hugged her grandchild, which was upsetting to Burke due to the Covid-19 pandemic. Burke explained she did not want Queen to hug the child due to the risk of Covid. The child wanted to give Queen a face mask and disinfecting wipes and spray, due to the ongoing pandemic. Burke and the child prepared a bag with the items, and left them at Queen's door.

**{¶5}** Queen appeared at Burke's home uninvited again on April 27, 2020, which was the child's birthday, while Burke and her family were outside in the yard. Queen

wanted to take the child to her automotive shop so the child could visit with her biological father on her birthday.  Burke refused to allow the child to go with Queen.

{¶6}　In August of 2020, Queen posted several times on Facebook, calling Burke a profane name and criticizing her refusal to allow Queen's son to see the child unsupervised.  Burke again texted Queen to leave her alone.  However, on September 1, 2020, Queen drove up to Burke's home uninvited while Burke was outside with her family. Queen yelled to her grandchild that she loved her, then gestured with her middle finger before driving away and parking down the street.   The gesture was visible to Queen's grandchild, as well as to Burke's other children. Burke took her children inside the house, and called the police.

{¶7}　After these incidents, Burke was shaking and nervous, and her heart was pounding.  Further, the child's behavior would deteriorate following the incidents with Queen.   She would become angry and act out, and would refuse to use the bathroom despite being previously potty trained.   The child's pediatrician recommended counseling for the child based on the behavioral issues which arose after Queen's unannounced visits.

{¶8}　Burke filed a petition for a civil stalking protection order (hereinafter "CPO") on September 2, 2020.  The trial court issued an ex parte CPO on September 14, 2020, following an ex parte hearing.  The case proceeded to a full hearing on September 30, 2020, where both parties were represented by counsel and presented evidence. Following the hearing, the trial court issued the CPO, restraining Queen from coming near Burke, Burke's fiancé, or the child for a period of three years.

**{¶9}** Queen then filed a motion for a judgment notwithstanding the verdict, or in the alternative for a new hearing. The trial court found a motion for judgment notwithstanding the verdict was not applicable to a CPO case. The trial court considered the merits of Queen's request for a new hearing on the basis the court's judgment was not supported by the evidence, and overruled the motion.

**{¶10}** It is from the September 30, 2020 and January 11, 2021 judgments of the trial court Queen prosecutes this appeal, assigning as error:

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE CIVIL STALKING PROTECTION ORDER AS SUCH ORDER WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE OR THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶11}** Queen argues the trial court's judgment is against the manifest weight and sufficiency of the evidence because: (1) there was insufficient evidence Queen knowingly caused Burke mental distress, (2) there was insufficient evidence of a pattern of conduct because the incident in 2019, was too remote in time to the incidents in 2020, and (3) the trial court improperly relied on evidence of incidents involving Queen's son and Queen's best friend in reaching its decision.

**{¶12}** The trial court issued a CPO pursuant to R.C. 2903.214. A petitioner may seek relief under R.C. 2903.214 when the respondent allegedly committed menacing by stalking in violation of R.C. 2903.11, which provides in pertinent part:

(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶13} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature…." R.C. 2901.22(B). "Mental distress" for purposes of the menacing by stalking statute includes "[a]ny mental illness or condition that involves some temporary substantial incapacity" and "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2).

{¶14} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Olenik v. Huff*, 5th Dist. Ashland No. 02-COA-058, 2003-Ohio-

4621, at ¶ 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this Court must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶15} Further, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* Co., 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson*, 66 Ohio St.3d 610, 1993-Ohio-9, 614 N.E.2d 742. The underlying rationale for giving deference to the findings of the trial court rests with the knowledge the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶16} Queen argues there was no evidence she had reason to believe her actions in leaving a birthday gift at the door and knocking, or otherwise showing up at the house uninvited would cause Burke and the child mental distress, and points to evidence of other invited visits and positive interactions between the parties in support of her argument.

{¶17} Burke presented evidence she repeatedly asked Queen to stay away from her home unless Queen was invited.   Burke testified concerning her nervousness and

anxiety after Queen's unannounced visits, as well the behavior problems the child displayed after Queen's visits, which ultimately resulted in a recommendation by the child's pediatrician of counseling for the child.  While Queen argues she couldn't possibly be aware her conduct would cause mental distress, the text messages between the parties demonstrate Burke repeatedly stressed to Queen she did not want Queen to visit unannounced.   The evidence demonstrated during visits, whether planned or unannounced, Queen continued to argue with Burke regarding Burke's refusal to allow Queen's son to see the child in an unsupervised setting.  There was evidence the parties argued during a scheduled visit with the child, and evidence Queen criticized Burke for her parenting choices regarding the child on social media.  From all of this evidence, the trial court could conclude Queen "knowingly" caused Burke and the child mental distress as defined by statute.

**{¶18}**  Queen next argues there is insufficient evidence she engaged in a "pattern of conduct" because her unannounced visit in 2019, was too remote in time to be considered in conjunction with her conduct in 2020.

**{¶19}**  "Pattern of conduct" is defined in R.C. 2903.211(D)(1) as "two or more actions or incidents closely related in time."   In *Bloom v. Macbeth*, 5th Dist. Ashland No. 2007-COA-050, 2008-Ohio-4564, this Court found a "pattern of conduct" was supported by the evidence where one incident occurred approximately two years before the CPO hearing, the second incident occurred approximately one month before the hearing, and the third incident took place three weeks before the hearing.  *Id.* at ¶8, 12.

**{¶20}**  In the instant case, we find the trial court did not err in finding a "pattern of conduct" was demonstrated by the evidence where one incident occurred in December

of 2019, two incidents occurred in April of 2020, and the third incident occurred in September of 2020. The four incidents were separated by less than a year. The fact that between the unannounced visits there were mutually arranged-upon phone calls between Queen and the child and at least one pre-arranged visit does not negate the pattern of Queen showing up unannounced at the house despite Burke's repeated requests she refrain from doing so.

{¶21} Finally, Queen argues the court improperly considered evidence Queen's son came to Burke's house uninvited, and Queen's best friend stopped and asked the child to come to her house to swim when the child was playing in the front yard. While the trial court admitted evidence of incidents involving Queen's son and best friend, the trial court was clear it would not consider this evidence in determining whether Queen's behavior violated the statute. Tr. 21-22, 41. Further, in overruling Queen's motion for new trial, the trial court stated, "That testimony provided context, but I did not rely upon either of those events as forming any part of Queen's pattern of conduct." Judgment entry, January 11, 2021, page 8. We find the incidents involving Queen's son and friend were not considered by the trial court as evidence of Queen's pattern of conduct, but merely provided context.

{¶22} We find the trial court's judgment was supported by sufficient evidence and was not against the manifest weight of the evidence, and the trial court therefore did not abuse its discretion in granting Burke's petition for a CPO. The assignment of error is overruled.

**{¶23}**  The judgment of the Delaware County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Wise, John, J.  and

Wise, Earle, J. concur