[Cite as *Caldwell v. Koehler*, 2023-Ohio-4527.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| LOIS CALDWELL | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| Petitioner-Appellee | : | Hon. Andrew J. King, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2023 CA 0012 |
| JENNETTE KOEHLER | : | |
| | : | |
| Respondent-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:    Appeal from the Richland County Court of Common Pleas, Case No. 2022-CV-410R

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    December 13, 2023

APPEARANCES:

For Appellant

CASSANDRA J.M. MAYER
452 Park Avenue West
Mansfield, OH 44906

For Appellee

DARIN AVERY
105 Sturges Avenue
Mansfield, OH 44903

*Gwin, P.J.,*

{¶1} Appellant appeals the February 6, 2023 judgment entry of the Richland County Court of Common Pleas overruling her objections to the magistrate's decision.

*Facts & Procedural History*

{¶2} On August 16, 2022, appellee Lois Caldwell filed a petition for civil stalking protection order against appellant Jennette Koehler. The magistrate granted appellee an ex parte order of protection, and set a full hearing for August 26, 2022. Appellant filed a motion to continue the August 26th hearing. The trial court granted the motion and continued the hearing until September 29, 2022.

{¶3} At the outset of the hearing, the magistrate stated she would inquire of appellee to obtain information the "court needs to make a decision in this case," and that appellant would be permitted to cross-examine appellee. Appellee was the only witness to testify at the hearing.

{¶4} Appellee has lived in her home for twenty-two years. Appellant is her neighbor, and has lived in the neighborhood for approximately two years. The houses are approximately four hundred feet apart, in a rural area. Appellant's fiancée was shot and killed by police at appellant's home in August of 2021, after a standoff. Appellee described how, in March of 2022, appellant began screaming in the woods between the homes at least once per week. In April of 2022, appellant placed large signs in her yard that stated "murdered" or "murder" on them, facing appellee's home.

{¶5} In May of 2022, appellee was on her patio with her grandson and his fiancée. After they were out there for a half-hour, appellant came out, stared at appellee, flipped her off, and "mooned them." Appellant then screamed for forty-five minutes. Other

neighbors came to check on appellee.  Appellee testified that, when appellant was yelling she stated, "that she wishes I was dead.  Me and my whole family deserved to be dead.  That his life was worth more than all ours put together.  It was just random things.  She said she hoped I would die in my sleep."  Appellant also told appellee, "I'd like to blow your fucking brains out."  Appellee contacted the police the next day.  They suggested she file for a protection order.  Appellee did not do so because she thought maybe things would calm down.

{¶6}  On August 15, 2022, appellee was walking her dog down the road.  Appellant's dogs were circling around them.  Appellee asked appellant to call her dogs, but appellant just stared at her.  Appellee walked down the street and the dogs kept following her.  Appellant attempted to corral her dogs, but they would not listen.  Appellant then started screaming that she would like to "blow appellee's fucking brains out" and if appellee "was just dead none of this would be happening."  Appellant looked at appellee and told her, "I pray every night that you will die."  Appellant testified she wants to live in peace and walk her dog down the road without being threatened.

{¶7}  Appellee does not know why appellant thinks appellee had something to do with appellant's fiancée's death because appellee was not at home when he died.

{¶8}  Counsel for appellant cross-examined appellee.  Appellee testified she knew appellant was directing her screaming and yelling at appellee because appellant was always screaming in her direction, or stating appellee's name.  Appellee confirmed she had issues with appellant's fiancée prior to his death because he was shooting guns at the end of her driveway and running around the neighborhood naked.

{¶9}   Appellant chose not to testify or present any other testimony.  Appellant introduced into evidence the photographs utilized during cross-examination of appellee.

{¶10}  After the full hearing, the magistrate granted appellee an order of protection against appellant until August 16, 2025.  The magistrate made detailed findings of fact, including the following:  in March of 2022, appellant began going outside at night and screaming into the woods between the two homes; appellee knows these threats are directed at her; in a recording provided to the court from May of 2022, appellant can be heard calling appellee "a mother fucking old hag" and "murdering bitch"; in April of 2022, appellant placed signs in her yard facing appellee's home with the word "murdered" or "murder" painted on it; on May 8, 2022, appellee was on her porch when appellant screamed for forty-five minutes, flipped her off, and mooned her; during this incident, appellant referred to appellee by name; appellant stated she wished appellee were dead; appellant stated appellee and her whole family deserve to be dead and appellant hoped appellee would die in her sleep; at some point, appellant told appellee she would like to "blow her fucking brains out"; in one clip from May 8, 2022, appellant can be heard yelling, "you make up lies about me, murderer.  You murdered a (unintelligible) … you freak! Your husband was a (unintelligible) you fucking hypocrite!  You murdered your husband, didn't you and you hated that (unintelligible)!  Fucking murdering hypocrite!  What do you think is going to happen because you murdered a * * * human being?  You fucking freak! You …killed…a…man!  He was more of a man than you will ever meet in your whole fucking life!"; in a second clip from May 8, 2022, appellant can be heard yelling, "Get ready! For (unintelligible) years of enlightenment! (Unintelligible) murderer!  You killed a (unintelligible)!  You're a fucking murderer Lois Caldwell!  You're a murderer, a liar, a

(unintelligible) freak, a (unintelligible) pill popper!  Why don't you go out and swig some more wine?"; in the final clip, appellant states, "You should all be dead * * * His life is way more valuable than all of yours put together * * * you are all worms"; appellee contacted the police the next day, but did not seek a protection order or criminal charges because she thought things would calm down; on August 15, 2022, appellee and her dog were approached appellant's dogs; appellant followed appellee to fetch her dogs and, when appellant got near appellee, appellant told appellee this would not happen if appellee were dead; and appellant stated she wanted to blow appellee's head off and she prayed every night appellee would die.

{¶11} The magistrate also issued conclusions of law.  The magistrate found appellee established that appellant engaged in two separate events which caused appellee to believe that appellant would cause her physical harm or cause mental distress.  Further, that appellant with her loud music, screaming, and posting of signs has interfered with appellee's privacy and quiet enjoyment of her property.  The magistrate noted this behavior has been "going on for a period of months" and "has included multiple statements wishing for [appellee's] death."  Finally, the magistrate found, "clearly, the intent of these tirades is to cause mental distress to [appellee] and to cause her move or, perhaps, to commit suicide.  Threats of violence are not necessary for the issuance of a protection order.  Thus, [appellee] established a pattern of conduct necessary for the issuance of a civil stalking protection order."

{¶12} Appellant filed objections to the magistrate's decision.  Appellant argued: there was insufficient evidence of a pattern of conduct as required; there was insufficient evidence that appellant knowingly caused appellee to believe appellant would cause

appellee physical harm or mental distress; and the magistrate's questioning of [appellee] on direct examination prejudiced [appellant]. The trial court issued a judgment entry on February 6, 2023 overruling appellant's objections to the magistrate's decision.

{¶13} Appellant appeals the February 6, 2023 judgment entry of the Richland County Court of Common Pleas and assigns the following as error:

{¶14} "I. THE TRIAL COURT ERRED WHEN IT ADOPTED THE MAGISTRATE'S DECISION GRANTING THE PETITIONER'S REQUEST FOR AN ANTI-STALKING PROTECTION ORDER AGAINST RESPONDENT AS PETITIONER FAILED TO DEMONSTRATE SUFFICIENT EVIDENCE OF TWO OR MORE INCIDENTS, CLOSELY RELATED IN TIME, WHEREIN RESPONDENT CAUSED PETITIONER TO BELIEVE THAT SHE WOULD CAUSE HER PHYSICAL HARM OR MENTAL DISTRESS, AS REQUIRED BY STATUTE.

{¶15} "II. THE TRIAL COURT FURTHER ERRED IN ALLOWING THE MAGISTRATE TO QUESTION THE UNREPRESENTED PETITIONER AS ON DIRECT, THEREBY ENSURING TO ELICIT SUFFICIENT EVIDENCE TO SUPPORT A FINDING ON BEHALF OF THE UNREPRESENTED PETITIONER."

I.

{¶16} In her first assignment of error, appellant contends the trial court committed error when it adopted the magistrate's decision because there was not sufficient evidence of a pattern of conduct and/or not sufficient evidence that appellant knowingly caused appellee mental distress.

{¶17} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No.

2015AP020007, 2015-Ohio-4755. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. To find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶18} A judgment supported by competent and credible evidence will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v.* Garson, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶19} "To be entitled to a civil stalking protection order, a petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking, a violation of R.C. 2903.11, against the person seeking the order." *Tumblin v. Jackson*, 5th Dist. Coshocton No. 06CA002, 2006-Ohio-3270. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's Law Dictionary 1182 (6th Ed. 1990).

{¶20}  R.C. 2903.211(A)(1) defines "menacing by stalking" as follows, in part, "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person * * *."

{¶21}  Appellant first contends the trial court committed error in adopting the magistrate's decision because the magistrate incorrectly determined appellee established a "pattern of conduct" by a preponderance of the evidence.

{¶22}  R.C. 2903.211(D)(1) defines "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."  The magistrate and trial court found there were at least two incidents closely related in time which formed the pattern of conduct.  Appellee testified to one incident in May of 2022, when appellant screamed at appellee, stated she wished appellee were dead, stated appellee and her whole family deserved to be dead, stated she wished appellee would die in her sleep, and told appellee she would like to "blow her fucking brains out."  Appellee testified to an incident approximately two months later where appellant told appellee she "wanted to blow [appellee's] head off" and "prayed every night [appellee] would die."  The two incidents in this case are separated by only approximately two months.  See *Burke v. Queen*, 5th Dist. Delaware No. 21 CAE 02 0009, 2021-Ohio-3619 (incidents formed pattern of conduct when separated by less than a year).  Accordingly, we find the trial court's determination as to "pattern of conduct" to be supported by sufficient evidence and not against the manifest weight of the evidence.

**{¶23}** Appellant also argues the trial court committed error in adopting the magistrate's decision because appellee failed to prove, by a preponderance of the evidence, that appellant knowingly caused appellee mental distress.

**{¶24}** R.C. 2903.211(D)(2) states as follows:

(2) "Mental distress" means any of the following:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

**{¶25}** Mental distress need not be incapacitating or debilitating, and expert testimony is not required. *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422. The statute does not require a person to actually suffer physical harm or mental distress; instead, a petitioner only needs to show, by a preponderance of the evidence, that the respondent will cause the petitioner to believe that respondent will cause the petitioner mental distress or physical harm. *Finnegan v. Barber*, 5th Dist. Richland No. 2019 CA 0007, 2019-Ohio-4427. Further, an objective standard is to be applied to the impact upon a victim's state of mind as it relates to threatening communications. *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, 895 N.E.2d 896 (10th Dist.).

**{¶26}** Appellant contends appellee's testimony is insufficient to demonstrate appellant knowingly caused appellee mental distress. We disagree.

{¶27} Upon review, we find appellee presented competent and credible evidence that appellant knowingly engaged in a pattern of conduct that caused appellee mental distress. The evidence demonstrates appellant continuously interfered with appellee's privacy and enjoyment of her property by screaming at appellee, screaming in the woods, and posting large signs directed towards appellee for a period of months. *N.P. v. T.N.*, 8th Dist. Cuyahoga No. 106314, 2018-Ohio-2647. Further, appellant made multiple statements directed at appellee, wishing for appellee's death.

{¶28} We find the phrases "would like to blow your fucking brains out," "want to blow your head off," "prayed every night [appellee] would die," and "get ready," are sufficient for appellee, as an objective person, to reasonably believe appellant will cause appellee mental distress or physical harm. Appellee testified she just wants to be able to live in peace without being told she needed to die, and walk her dog without being threatened. From appellee's testimony, the trial court could conclude appellant knowingly caused appellee mental distress as defined by the statute.

{¶29} We find the trial court's judgment was supported by sufficient evidence and was not against the manifest weight of the evidence. Therefore, the trial court did not abuse its discretion in granting the petition.

II.

{¶30} In her second assignment of error, appellant contends the trial court committed error in adopting the magistrate's decision because the magistrate was biased and had a conflict of interest because she questioned appellee at the ex parte hearing and during direct examination at the full hearing.

{¶31} Appellant did not file a motion with the trial court to disqualify the magistrate, and did not raise the issue at the full hearing when the magistrate was asking questions of appellee. Appellant raised the argument in support of her objections to the magistrate's decision.

{¶32} This Court has previously held that, "the proper method to challenge a magistrate's impartiality is to file a motion for disqualification with the trial court." *Barton v. Barton*, 5th Dist. Fairfield No. 15-CA-13, 2015-Ohio-5194, *Patton v. Patton*, 5th Dist. Muskingum No. CT2009-0031, 2010-Ohio-2096; see also *Angus v. Angus*, 10th Dist. Franklin No. 15AP-655, 15AP-693, 2016-Ohio-7789. In support of our holding, we cited Civil Rule 53(D)(6), which specifically states, "disqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court." *Id.* This Court has held that, when an appellant fails to file a motion to disqualify pursuant to Civil Rule 53(D)(6), the issue is waived. *Id.* Accordingly, because appellant failed to file a motion to disqualify the magistrate pursuant to Civil Rule 53(D)(6), the issue is waived.

{¶33} However, even if we consider appellant's argument, we find the trial court did not commit error in adopting the magistrate's decision.

{¶34} A magistrate is biased or prejudiced against a party if she harbors "a hostile feeling or spirit of ill will * * * toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the [magistrate], as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956). Generally, mere disagreement or dissatisfaction with a ruling does not demonstrate bias or prejudice. *In*

*re Disqualification of Corrigan*, 105 Ohio St.3d 1243, 2004-Ohio-7354, 826 N.E.2d 302. The party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity. *Rick's Foreign Exchange Co. v. Greenlee*, 2nd Dist. Montgomery No. 26096, 2014-Ohio-4505.

{¶35} Appellant contends the magistrate improperly assisted appellee by asking questions and shaping the case in her favor after hearing appellee's testimony at the ex parte hearing. Appellee appeared pro se at the hearing. We agree pro se litigants are not granted leniency in court proceedings simply because they choose to appear without counsel. However, appellant's pro se appearance does not preclude the magistrate from asking questions of a witness during a hearing. *McCandlish v. McCandlish*, 5th Dist. Licking No. 13-CA-37, 2013-Ohio-5066. "In the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth." *State v. Baston*, 85 Ohio St.3d 418, 709 N.E.2d 128 (1999).

{¶36} Further, Civil Rule 53(C)(3) permits a magistrate to regulate proceedings and specifically states they can put witnesses under oath and "examin[e] them." Civil Rule 53(C)(3)(c). While a magistrate may not act as an advocate in examining a witness, a magistrate may examine a witness to elicit information under the rule. *In re Miller*, 109 Ohio App.3d 455, 672 N.E.2d 675 (2nd Dist. Montgomery 1996). In this case, the magistrate did not act as an advocate. Rather, the magistrate merely questioned appellee as to the facts surrounding her CPO petition.

{¶37} The record in this case does not demonstrate the magistrate, or the trial court in adopting the magistrate's decision, acted with "bias, prejudice, or prodding of the witness to elicit partisan testimony." Upon review, we find the magistrate's statements and questioning are consistent with Evidence Rule 611(A) and Evidence Rule 614. Evidence Rule 611(A) states, "the court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Evidence Rule 614(A) provides "the court may, on its own * * * call witnesses, and all parties are entitled to cross-examine witnesses thus called." Counsel for appellant was permitted to cross-examine appellee with no limitations imposed by the magistrate. Evidence Rule 614(B) permits the court to "interrogate witnesses, in an impartial manner, whether called by itself or by a party." The magistrate's questions were relevant and do not suggest a bias towards appellee.

{¶38} Appellant's second assignment of error is overruled.

{¶39} Based on the foregoing, appellant's assignments of error are overruled.

{¶40} The February 6, 2023 judgment entry of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

King, J., concur